# GALVESTON, HARRISBURG AND SAN ANTONIO RAILWAY. COMPANY *v.* TEXAS.

ERROR TO THE COURT OF CIVIL APPEALS FOR THE FOURTH SU-
PREME JUDICIAL DISTRICT OF THE STATE OF TEXAS.

No. 421. Argued January 21, 24, 1898. — Decided April 25, 1898.

When it does not appear from the plaintiff's statement of his case, that the suit was one arising under the Constitution and laws of the United States, a petition to remove the cause into the Circuit Court of the United States should be overruled.

The provision in the constitution of Texas of 1869, that the legislature should not thereafter grant lands to any person or persons, as enforced against the Galveston, Harrisburg and San Antonio Railway Company, the successor of the Buffalo Bayou, Brazos and Colorado Railway Company, which had received grants of public land under previous legislation to encourage the construction of railroads in that State, involved no infraction of the Federal Constitution.

A clause in a charter of a railroad company, granting it power to consolidate with or become the owner of other railroads, is not such a vested right that cannot be rendered inoperative by subsequent legislation, passed before the company avails itself of the power thus granted.

The question in this case was as to whether the railroad company was entitled to the particular lands in controversy by virtue of the location thereon of certificates issued for building the road from Columbus to San Antonio. The ruling was that, as the law stood, no title was acquired thereby, and the State was entitled to recover. But it was also contended that no recovery could be had because the company had earned other lands of which it had been, as it alleged, unlawfully deprived. The Supreme Court of the State held that it was no defence to the suit, by way of set-off, counter-claim, or otherwise, that the company might have been entitled to land certificates for road constructed under the law of 1876, and said that it had "never been ruled that the claimant of land against the State under a location made by virtue of a void certificate has any equity in the premises by reason of being the possessor of another valid certificate." *Held,* that in arriving at this conclusion the state courts did not determine whether as to those other lands any vested right of the railway company had or had not been impaired or taken away; and that this court cannot hold that the company was denied by the judgment of those courts in this respect any title, right, privilege or immunity secured by the Constitution or laws of the United States.

THIS was a suit commenced on behalf of the State of Texas against the Galveston, Harrisburg and San Antonio Railway Company, in the District Court of Brewster County, to recover 1383 tracts of land, containing in the aggregate eight hundred and seventy-nine thousand and seventy-eight acres, situated in various counties, and to cancel certificates and patents issued to the railway company therefor. The railway company filed a petition for the removal of the cause to the Circuit Court of the United States, which was overruled. The company then presented its defences by demurrer, plea and answer, relying on its charters, and the laws, general and special, of the State of Texas, by reason whereof and action thereunder, it asserted it had become entitled to the lands in question; also setting up that it had in 1880 mortgaged the land in controversy to Andrew Pierce and George F. Stone; that Pierce was dead, and that Stone was the sole surviving trustee and was a necessary party to the suit; and the grounds on which it insisted that the State was estopped from recovering the lands; and in its answer prayed for affirmative relief.

The cause was tried, and judgment entered therein in favor of the State of Texas, and was thereupon carried by appeal to the Court of Civil Appeals for the Fourth Supreme Judicial District of the State of Texas, which court then certified the following statement and questions to the Supreme Court of the State for adjudication:

"The State of Texas instituted suit against appellant to cancel certain land certificates and patents issued by the State to appellant, for land, amounting to $879,078\frac{1}{20}$ acres. It was alleged and proved that the certificates and patents were issued to the Galveston, Harrisburg and San Antonio Railway Company, for a portion of its railroad constructed between the Colorado River and Guadalupe River between the time of the adoption of the constitution of 1869 and the passage of the act of August 16, 1876 (arts. 4267 to 4277, Rev. Stats.). On July 27, 1870, by special act of the legislature, appellant was chartered and recognized as the successor of the Buffalo Bayou, Brazos and Colorado Railway Company. After the passage of the act of August 16, 1876, and before its repeal,

in 1882, appellant constructed about 163 miles of railroad, from San Antonio westward towards El Paso, for which the State refused to issue land certificates, the governor refusing the application for inspection on May 22, 1882, on the ground that the law granting certificates had been repealed.

"Question 1. Did section 6, article X, of the constitution of 1869 repeal all laws giving railroad companies the right to earn lands from the State by the construction of railroads; and, if so, would this repeal apply as well to the right to earn lands given through charters as through general laws?

"Question 2. If the above be answered in the negative, did appellant succeed to the rights of the Buffalo Bayou, Brazos and Colorado Railway Company by virtue of the special act of 1870, said Buffalo Bayou, Brazos and Colorado Railway Company being restricted by special act of February 11, 1854, to run its line to Austin?

"Question 3. If the laws as to land grants to railroads passed prior to 1869 were repealed by the constitution of that year, can appellant interpose and maintain in this suit the equitable defence that if the certificates issued for that portion of the road between the Colorado and the Guadalupe Rivers, from 1870 to 1876 were illegally obtained that the State is in no position to ask relief sought by reason of the fact that appellant has earned certificates for said 163 miles of road?

"Question 4. If the last question be affirmatively answered, would the fact that at the time the land for the 163 miles west of San Antonio was earned by appellant, the public lands were exhausted, affect the equities of the case?"

The Supreme Court was of opinion "that the Galveston, Harrisburg and San Antonio Railway Company did not by virtue of the act of July 27, 1870, acquire the right to earn lands by the construction of its line to San Antonio." This answered the second question and rendered an answer to the first unnecessary.

As to the third question, the Supreme Court was "of the opinion that it is no defence to an action of the State for the recovery of the lands involved in this suit, that the company may have been entitled to certificates for the one hundred and

sixty-three miles of additional road constructed under the law of 1876." The fourth question, therefore, required no answer.

The case is reported, 89 Texas, 340.

The opinion of the Supreme Court having been transmitted to the Court of Civil Appeals, that court proceeded to dispose of the case, and held that there was no error in the refusal to remove the cause; that Stone was not a necessary party to the suit; that the State of Texas was not estopped, by "the illegal acts of the land commissioner in granting the land certificates and of the governor in granting patents to the land," from recovering the lands sued for; and overruled the other assignments of error in view of the answers of the Supreme Court to the questions propounded. Thereupon the judgment of the District Court was affirmed. A motion for rehearing having been made and overruled, the company applied to the Supreme Court for a writ of error, which was denied, whereupon a writ of error from this court was allowed by the Chief Justice of the Court of Civil Appeals.

The Buffalo Bayou, Brazos and Colorado Railroad Company was incorporated by an act approved February 11, 1850, c. 156, and authorized to construct and maintain a railroad as therein described. Laws Tex. 1849–50, pp. 194, 198.

By an act approved January 29, 1853, the route was defined as follows: "Commencing at a suitable point on Buffalo Bayou in the county of Harris, thence running by such course and to such point or points at or near the Brazos and Colorado Rivers, or across the same as said company shall deem advisable, with the privilege of making, owning and maintaining such branches to said road as they may deem expedient." By the second section of this act there was "granted to said company eight sections of land, of six hundred and forty acres each, for every mile of railway actually completed and ready for use," for which the commissioner of the general land office of Texas was authorized to issue certificates under restrictions mentioned, and upon location and survey patents were to be issued as provided. Special Laws, 1853, p. 3.

On January 30, 1854, the legislature passed a general land grant act, entitled "An act to encourage the construction of

railroads in Texas by donations of lands." c. 15. Section 1 provided "that any railroad company chartered by the legislature of this State, heretofore or hereafter, constructing within the limits of Texas, a section of twenty-five miles or more of railroad, shall be entitled to receive from the State a grant of sixteen sections of land for every mile of road so constructed and put in running order." Railroad companies applying for land under this act were required by section 3 to cause the land to be surveyed into sections of 640 acres each, and in square blocks of not less than six miles, and the field notes of the survey and map or maps to be deposited with the Commissioner of the General Land Office. Section 6 related to patents, certificates, surveys, etc.

By section 11 all the alternate or even sections of lands surveyed in pursuance to the provisions of this act were "reserved to the use of the State, and not liable to locations, entries or preëmption privileges, until otherwise provided by law." Section 12 provided: "That the provisions of this act shall not extend to any company receiving from the State a grant of more than sixteen sections of land, nor to any company for more than a single track road, with the necessary turnouts ; and any company now entitled by law to receive a grant of eight sections of land per mile for the construction of any railroad, accepting the provisions of this act, shall not be entitled to receive any grant of land for any branch road ; provided, this act shall not be so construed as to give to any company now entitled by law to receive eight sections of land, more than eight additional sections ; provided, that no person or company shall receive any donation or benefit under the provisions of this act, unless they shall construct and complete at least twenty-five miles of the road contemplated by their charter within two years after the passage of this act ;" etc., and that the act should continue in force for the term of ten years from the time it shall take effect and no longer. Laws, 1854, p. 11.

On the same day a supplemental act was approved providing that no railroad company benefited by the act should receive any donation of land under its charter, or under the

act of which this was a supplement, for any work not done within ten years after the passage of the act. Laws, 1854, p. 16.

By a special act of February 4, 1854, c. 45, the charter of the Buffalo Bayou, Brazos and Colorado Railroad Company was amended, and it was provided that the company should be " entitled to all the rights, privileges and benefits accruing from any general law or laws that have or may hereafter be passed by this State to encourage the constructing of railroads, in the same manner and to the same extent as if the gauge of said road was the same now fixed, or which may be hereafter fixed upon by this State." Spec. Laws, 1854, p. 69. On the same day another special act was passed providing "that if the Buffalo Bayou, Brazos and Colorado Railroad Company shall avail themselves of the act to which this is a supplement, or accept any donation of land from the State, they shall not be entitled to receive any such donation from the State under the provisions of this law or any law that has heretofore been passed for their benefit, for any portion of their road which shall not be completed and ready for use within ten years from and after the passage of this act. Provided, that said company shall restrict themselves to the following route; viz., to an extension of their existing road to Austin, in the county of Travis, crossing the Brazos River at any point between the town of Richmond, in Fort Bend County, and Hidalgo Falls, in Washington County, and with the right of extending their road from Austin to connect with any road running north of Austin towards the Pacific Ocean. Provided, such connections be made between the ninety-sixth and ninety-eighth parallels of longitude; and provided, further, that said company shall have no right to build branches from their main road." Spec. Laws, 1854, p. 70.

During the period of the civil war, two laws were passed which had the effect to relieve the existing railroad companies from the limitations as to time embraced in the act of January 30, 1854, until two years after the close of the war. Laws, 1862, p. 43, c. 62, Jan. 11, 1862; p. 46, c. 69, Jan. 11, 1862.

On November 13, 1866, an act, c. 174, was approved to this effect: "That the grant of sixteen sections of land to the mile to railroad companies, heretofore or hereafter constructing railroads in Texas, shall be extended, under the same restrictions and limitations heretofore provided by law, for ten years after the passage of this act." Laws, 1866, p. 212.

The state constitution of 1869 was adopted December 3, 1869, and accepted by Congress March 30, 1870, the sixth section of article X of which instrument read as follows: "The legislature shall not hereafter grant lands to any person or persons, nor shall any certificates for land be sold at the land office, except to actual settlers upon the same, and in lots not exceeding one hundred and sixty acres."

July 27, 1870, the legislature passed an act entitled "An act supplementary to the act to incorporate the Buffalo Bayou, Brazos and Colorado Railway Company, and to the other special acts relating to said company." The preamble recited:

"Whereas, on the seventh of July, 1868, 'the roadbed, track, franchise and chartered rights and privileges' of the Buffalo Bayou, Brazos and Colorado Railway Company were sold on executions issued on judgments against said company; and on the twenty-fourth January, 1870, the railroad of said company from Harrisburg to Alleyton, and its franchise, rights and other property appertaining thereto, were sold under the provisions of a mortgage or deed of trust made by said company on the first November, 1860, all of which appears of record; and whereas, the act of December 19, 1857, 'supplementary to and amendatory of an act to regulate railroad companies,' provides that the purchasers at such sales, and their associates, 'shall be entitled to have and exercise all the powers, privileges and franchises granted to' the company sold out 'by its charter, or by virtue of the general laws of this State;' and 'shall be deemed and taken to be the true owners of said charter and corporators under the same, and vested with all the powers, rights, privileges and benefits thereof;' and whereas, the purchasers at said sales, and their associates, have formed a new company under said old name, and have expended large sums of money in the reconstruction of said railroad, in the

purchase and completion of the Columbus Tap Railroad, and the bridge of the Brazos Iron Bridge Company over the Brazos River at Richmond; and whereas, said new company desires to be distinguished by name from said 'sold-out' company, to consolidate its property, and to extend said line of railroad."

Section 1 provided:

"That the new company heretofore known as the Buffalo Bayou, Brazos and Colorado Railway Company, referred to in the preamble of this act, shall be hereafter known by the corporate name of 'The Galveston, Harrisburg and San Antonio Railway Company,' and may alter its seal to conform to its name; provided, that said new company shall be liable to the State of Texas for the debt of said 'sold-out' company for loans made to the latter company from the special school fund, in the same manner and to the same extent as said 'sold-out' company was liable; and that said change of name shall in no respect impair or affect said liability, or the existing lien or mortgage of the State upon the railroad of said company as security for said loans. Also, provided, that said change of name shall in no respect impair or affect any of the obligations of said new company to other parties, or the obligations of other parties to said new company; all of which may be enforced by or against said new company under said new name."

Section 3:

"That said new company is hereby authorized to extend the existing line of railroad owned and operated by said company from Columbus, in Colorado County, to San Antonio, in the county of Bexar, within four years from the passage of this act; and thence to a terminus on the Rio Grande, by such route as the directors shall deem most feasible, with a branch from the most suitable point to New Braunfels, in Comal County, within four years from the passage of this act; or said new company may connect with any line of railroad that may be constructed or under construction to San Antonio or the Rio Grande, south of the latitude of the city of Austin and the Colorado River instead of building its own line beyond the point of such connection; and may build to and connect with any line of railroad that may be constructed, or

under construction, and designed to form part of any railroad line to the Pacific, south of the thirty-fifth parallel of latitude; nothing herein being so construed as to exclude said new company from the right to construct also, any part of the line up the Colorado Valley, formally designated by said 'sold-out' company as its route under the provisions of the eleventh section of the act of December 19, 1857; provided, that if the said road shall not be completed within the time specified in this section, then this charter shall be forfeited."

Sections 11 and 12:

"Sec. 11. That said new company shall be entitled to the same or similar rights and relief, except state aid in bonds, or indorsement of, or guarantee of interest on bonds, granted to or provided for any other railroad company by the legislature, and upon the same or similar terms and conditions, so far as such rights and relief are, in their character, applicable to said new company or its line or lines of railroad.

"Sec. 12. That nothing in this act shall be so construed as to deprive any party interested, of the right to disprove any assumed fact stated in the preamble; provided, that nothing in this act contained shall be construed as reviving or renewing any land grant to said company for road hereafter to be completed, which it does not possess by existing law." Spec. Laws, 1870, p. 45.

Section 6 of Article X of the constitution of 1869 was subsequently amended, the amendment taking effect March 19, 1873. The section, as amended, read as follows:

"The legislature of the State of Texas shall not hereafter grant lands except for purposes of internal improvement, to any person or persons, nor shall any certificate for land be sold at the land office, except to actual settlers upon the same, and in lots not exceeding one hundred and sixty acres; provided, that the legislature shall not grant, out of the public domain, more than twenty sections of land for each mile of completed work, in aid of the construction of which land may be granted; and provided further, that nothing in the foregoing proviso shall affect any rights granted or secured by laws passed prior to the final adoption of this amendment."

August 16, 1876, a general law was enacted entitled "An act to encourage the construction of railroads in Texas by donations of lands," whereby it was provided that any railroad company theretofore chartered or which might be thereafter organized under the general laws of the State should, upon the completion of a section of ten miles or more of its road, be entitled to receive, and there was thereby granted to every such railroad from the State, sixteen sections of land for every mile of its road so completed and put in good running order. The act prescribed the usual formalities for ascertaining compliance on the part of railroad companies with the provisions of the act, the issue of certificates, etc.   Laws, 1876, 153.

April 22, 1882, the legislature passed an act repealing all laws in force granting lands for the construction of railroads. Laws, 1882, 3.

*Mr. Joseph Paxton Blair* for plaintiffs in error. *Mr. James A. Baker* and *Mr. R. S. Lovett* were with him on his brief.

*Mr. M. M. Crane*, attorney general of the State of Texas, for defendant in error.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

1. The State of Texas, as owner of the lands in question, sought by its petition the removal of the cloud cast upon its title by reason of certain certificates and patents.   The petition averred that those certificates were issued to the railway company for the construction of its road from the town of Columbus to the Guadalupe bridge during a period of time when there was no law in existence authorizing the issue of land certificates and patents, and charged that the action of the Commissioner of the General Land Office of the State in issuing and delivering the certificates, and permitting them to be located and surveyed upon the lands and returned to and filed in the General Land Office, and in the issue of the patents, was had and done wholly without authority of law and in

violation of the constitution and laws of the State. It did not appear from the State's statement of its case that the suit was one arising under the Constitution or laws of the United States, and the Court of Civil Appeals properly held that the petition to remove the cause into the Circuit Court of the United States came within the rule laid down in *Tennessee* v. *Union and Planters' Bank*, 152 U. S. 454, and subsequent cases, and that there was no error in overruling the application.

2. The railroad, franchises, rights and property of the Buffalo Bayou, Brazos and Colorado Railroad Company had been sold on execution and under foreclosure, and the purchasers at the sales and their associates had formed a new company under the old name. By the act of July 27, 1870, this new company was given the name of "The Galveston, Harrisburg and San Antonio Railway Company," to distinguish it from the "'sold-out' company;" was endowed with various franchises; and, among other things, was authorized to extend the existing line of railroad owned and operated by the company from Columbus, in Colorado County, to San Antonio, in the county of Bexar, and thence to a terminus on the Rio Grande.

At this time the constitution of Texas provided: "The legislature shall not hereafter grant lands to any person or persons, nor shall any certificates for land be sold at the land office, except to actual settlers upon the same, and in lots not exceeding one hundred and sixty acres."

The certificates and patents in question in this suit were issued to the company for a portion of its railroad constructed between the Colorado and the Guadalupe Rivers, under the act of July 27, 1870, and before the act of August 16, 1876, took effect.

Plaintiff in error contends that by virtue of the charter of the old company and the amendments thereto, and the general laws, prior to 1869, it had a vested and contract right to receive and hold these lands, which was impaired or of which it was deprived, in violation of section ten of Article I of the Constitution of the United States, and section one of the Four-

teenth Amendment thereof, by section six of Article X of the state constitution of 1869, as given effect by the state courts.

The Supreme Court of Texas considered the legislation at length in replying to the questions propounded by the Court of Civil Appeals.

Conceding, for the purposes of argument, that the original company acquired a right to sixteen sections of land per mile of constructed railroad under the general law of January 30, 1854, and the special acts amendatory of its charter; that this right was preserved by the general law of November 13, 1866; and that section six of Article X of the constitution of 1869 did not operate to repeal either of those acts in respect of the right of existing companies to lands in aid of the construction of the lines of road specifically defined in their charters, the court was nevertheless unable to conclude that after the constitutional provision took effect an act of the legislature which authorized the company to change its former route and to construct a different line of road would carry with it the right to acquire land by the construction of the new line.

In its view the law of January 30, 1854, applied only to companies then chartered, and was intended to grant lands for the construction of those roads only which the companies were authorized by their charters to build. And while in the absence of any constitutional inhibition on granting lands in aid of railroads, it might be that legislative authority to a company to change its line could properly be treated as carrying with it the privilege of earning lands for the construction of the new line, this did not follow as to new routes authorized after such land grants had been forbidden by the fundamental law. And here the act of February 4, 1854, supplementary to the act of the same date which extended the privileges of the law of January 30, 1854, to the company, restricted those privileges to the line to Austin and to the extension of that line. If then the new company had succeeded to the right to acquire lands by the construction of the line fixed by the supplementary act, the construction of a different road in the exercise of the power given by the act of 1870 could not involve an obligation to furnish lands in aid of such construction.

And the court said: "The company, before the passage of the act of 1870, had no right to acquire lands by the building of a railroad to San Antonio; to complete that right, a new grant was requisite; but at that time the legislature was prohibited in the broadest terms from making any grant whatever. It matters not that the transaction may be looked upon as being somewhat in the nature of an exchange, and that the building of the new line may have involved a grant of no more, or even of less land, than may have been acquired by the construction of the old line. It involved a grant of land as to the new line and that the legislature had no right to make. Let us state the proposition in another form. If it were the right of the company, under the existing laws, to acquire lands by doing a specific thing, the legislature having no power under the constitution to make any grant of lands, could not confer upon it the right to earn lands by doing another — a different thing.

"So far we have discussed the question as if in passing the act of 1870 the legislature had intended to transfer the right of the company as to the lands to be acquired, from the old to the new line. But we find nothing in the act which manifests such an intention. On the contrary, the 12th section of the act as above quoted indicates, that it was not the purpose in any manner to extend the existing rights of the company with reference to the acquisition of lands from the State.

"It is to be noted that the 3d section of the act of 1870 not only authorized the company to change its route so as to run to San Antonio, instead of Austin, but in addition thereto reserved to it the right to build upon the route formerly designated by the sold-out company. It is evident, therefore, that to concede to the company the right to earn lands by the construction of the new line involves a new and additional grant — a grant which the legislature, under the constitution of 1869, could have made neither expressly nor by implication." *Railway Company v. State*, 89 Texas, 340, 354; *Quinlan v. Houston & Texas Central Railway*, 89 Texas, 356; *Galveston, Harrisburg & San Antonio Railway v. Texas*, 81 Texas, 572.

In our judgment the constitutional provision as thus enforced involved no infraction of the Federal Constitution.

The Galveston Company was not identical with the Buffalo Bayou Company, but a new company in succession to the old.

The Buffalo Bayou Company became entitled to the benefits of the general law of January 30, 1854, by the first of the special acts of February 4, 1854; but by the supplemental special act of that date was restricted to the route to Austin, " with the right of extending their road from Austin to connect with any road running north of Austin towards the Pacific Ocean; provided, such connections be made between the ninety-sixth and ninety-eighth parallels of longitude; and provided further, that said company shall have no right to build branches from their main road."

Construing these two acts together, as we must, the contract between the State and the Buffalo Bayou Company would appear to have been that the company would build a line of road to Austin and northerly to some line of road going west to the Pacific Ocean, and the State would give the company sixteen sections of land per mile, but the company was restricted to the particular line and had no right to build branches from the main line. The State did not contract with the old corporation to build the road from Columbus to San Antonio, and the new company could not claim to earn lands by building this road, by virtue of what the old company had been empowered to do. The old company did not possess the right by existing law to build the road in question or branch lines, and the authority to construct it was not given until July 27, 1870, at which time the constitution of Texas forbade the granting of lands to railroad companies. And if there were no contract prior to July 27, 1870, to give land for the construction of a line of road from Columbus to San Antonio and thence west, the constitution of 1869 could not operate to impair any such.

But it is said that the right to a land grant of sixteen sections per mile under the act of 1854 had become a corporate franchise of the Buffalo Bayou Company, exercisable on every mile of road it might construct under competent legislative

authority; that it was subject in the first instance to a restriction as to route, which the legislature could at any time remove, and did remove by the act of July 27, 1870; and that the privilege of earning lands for the construction of the new line was included in the grant of authority to construct it. This is to assert that the Buffalo Bayou Company acquired by the legislation of 1854 a vested right to lands for the construction of whatever line of road, other than that then authorized and defined, it might in the future be empowered to build, though in the meantime the power to grant lands had been withdrawn from the legislature.

It is impossible to assent to such an application of the doctrine of vested rights. That subject was much considered and the authorities cited in *Pearsall* v. *Great Northern Railway Company*, 161 U. S. 646, and it was there held that a clause in a charter of a railroad corporation granting it certain powers to consolidate with or become the owner of other railroads was not such a vested right that it could not be rendered inoperative by a subsequent statute passed before the company had availed itself of the power granted. Provisions granting such rights or powers to a corporation, as observed in *Bank of Commerce* v. *Tennessee*, 163 U. S. 416, 425, "do not partake of the nature of a contract, which cannot for that reason be in any respect altered or the power recalled by subsequent legislation. Where no act is done under the provision and no vested right is acquired prior to the time when it was repealed, the provision may be validly recalled, without thereby impairing the obligation of a contract."

The Supreme Court of Texas did not hold that the right to construct the line defined in the second special act of February 4, 1854, and to earn lands by such construction, was affected by the constitutional provision; but held, in effect, that there could be no obligation, express or implied, to bestow lands for the construction of lines of road not authorized to be constructed until after the adoption of that provision.

The road from Columbus to San Antonio had not only not been constructed in 1869, but its construction had not been

authorized; and no principle of contract or vested rights intervened to defeat the power of the State in 1869 to modify or even repeal the general law of 1854.

Argument was earnestly made at the bar that by reason of the amendment of section six of article X of the constitution of 1869 in 1873, and the subsequent passage of numerous acts granting land in aid of railroad construction, this company was entitled under section eleven of the act of July 27, 1870, which gave it the same rights or relief granted to other companies, to receive the certificates in controversy even though it was not entitled to them under previous legislation. That section apparently refers to existing rights or relief, and not to such as might afterwards be acquired or obtained. But this was matter of construction for the state courts, and was disposed of by the decision of the Court of Civil Appeals, on whose attention the point was pressed, though no allusion is made to it in the opinion of that court.

3. The constitutional amendment of 1873 having relieved the legislature of the restriction imposed by the constitution of 1869, the act of August 16, 1876, granted to railroad companies, on the completion of ten miles or more of their roads, sixteen sections of land for every mile so completed and put in good running order. On April 22, 1882, an act was passed repealing "all laws or parts of laws now in force granting lands or land certificates to any person, firm, corporation or company for the construction of railroads, canals and ditches." This act stated that the exhaustion of the public domain subject to location created an imperative public necessity for the act to take effect on its passage; and the record shows that there was a deficiency in the public domain, August 31, 1882, of 6,136,615 acres.

After August 16, 1876, the railway company constructed its road between San Antonio and El Paso, amounting to 623.14 miles, much the largest portion thereof prior to April 22, 1882. No land certificates were issued or located for the construction of the road between these points. The company contended that by the construction of its road between San Antonio and El Paso it acquired under the act of August 16,

1876, a contract and vested right. to sixteen sections of land for each mile of road so constructed; that the issue of certificates had been prevented by the passage of the act of April 22, 1882; and that, consequently, that act impaired the obligation of the contract created by the act of. August 16, 1876, and divested the company of its right to lands in contravention of the Constitution of the United States. And further insisted that it was entitled to avail itself in this suit of this alleged unlawful deprivation not merely as a set-off or counter-claim against the State, but as an absolute defence. .

The case in this aspect is briefly this: The railway company sought and obtained certificates for building the road from Columbus to San Antonio, and had them located on the lands in question. But at that time the state constitution forbade the granting of lands for railway construction and the issue of certificates therefor, and the State brought suit for the recovery of the lands and the cancellation of the illegally issued muniments of title, which went to a decree in its favor.

The question was as to whether the railroad company was entitled to the particular lands in controversy by virtue of the location thereon of certificates issued for building the road from Columbus to San Antonio. The ruling was that, as the law stood, no title was acquired thereby, and the State was entitled to recover. But it was also contended that no recovery could be had because the company had earned other lands of which it had been, as it alleged, unlawfully deprived.

The Supreme Court of the State held that it was no defence to the suit, by way of set-off, counter-claim, or otherwise, that the company might have been entitled to land certificates for road constructed under the law of 1876, and said that it had "never been ruled that the claimant of land against the State under a location made by virtue of a void certificate has any equity in the premises by reason of being the possessor of another valid certificate." ·

In arriving at this conclusion the state courts did not determine whether as to those other lands any vested right of the railway company had or had not been impaired or taken

away; and we cannot hold that the company was denied by the judgment of those courts in this respect any title, right, privilege or immunity secured by the Constitution or laws of the United States.

*Judgment affirmed.*