### STATE OF OREGON v. THREE SISTERS IRR. CO. et al.

(Circuit Court, D. Oregon. December 30, 1907.)

No. 3,191.

1. REMOVAL OF CAUSES—GROUNDS—DECLARATION.

To warrant the removal of a cause as arising solely under the laws of the United States, the fact must appear from complainant's statement of his own claim in his bill or declaration.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, §§ 58, 59.]

2. SAME.

A suit is removable as arising solely under the Constitution, laws, or treaties of the United States, if from the questions raised by the bill it appears that some title, right, privilege, or immunity, on which the recovery depends, will be defeated by one construction of the Constitution or laws of the United States, and sustained by the opposite construction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, §§ 36–53, 58.]

3. SAME—IRRIGATION OF PUBLIC LANDS—CONTRACT.

Where a contract between plaintiff, the state of Oregon, and defendants, for the reclamation of certain desert lands, depended for its validity on Act Cong. Aug. 18, 1894, c. 301, 28 Stat. 422 [U. S. Comp. St. 1901, p. 1554], as amended by Act July 11, 1896, c. 420, 29 Stat. 413 [U. S. Comp. St. 1901, p. 1556], and Act March 3, 1901, c. 853, 31 Stat. 1188 [U. S. Comp. St. 1901, p. 1557], providing for the reclamation and irrigation of certain parts of the public domain to be conveyed to the states on performance of certain conditions, and that, before such act, there could have been no dealings between the parties with reference to the subject of the contract, an action by the state to annul the contract because of defendant's failure to comply therewith was one arising solely under the laws of the United States, and therefore removable to the federal courts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, §§ 37–40.]

## On Motion to Remand.

This is a suit brought in the state court by the state to cancel a contract entered into between itself and the defendant, the Three Sisters Irrigation Company, with reference to the reclamation of certain desert lands situated in Crook county, Or., in pursuance and by authority of Act Cong Aug. 18,

STATE OF OREGON V. THREE SISTERS IRR. CO.

1894, c. 301, 28 Stat. 422 [U. S. Comp. St. 1901, p. 1554], known as the Carey Act, and Act June 11, 1896, c. 420, 29 Stat. 413 [U. S. Comp. St. 1901, p. 1556], and Act March 3, 1901, c. 853, 31 Stat. 1188 [U. S. Comp. St. 1901, p. 1557], amendatory thereto. By the Carey act the Secretary of the Interior, with the approval of the President, is authorized and empowered to contract and agree with the state to donate, grant, and patent to it such of the desert lands, not exceeding 1,000,000 acres in amount, as the state may cause to be irrigated, reclaimed, and occupied, but before any such contract can be entered into, or any act done towards segregating any tract from the public domain, it is required that the state file a plat of the land proposed to be irrigated, which shall exhibit the plan, indicating the contemplated mode of reclamation, which plan shall be sufficient to thoroughly irrigate and reclaim the land in view for segregation, and shall also show the source of water to be used. The state is then authorized to make all necessary contracts to cause the lands to be reclaimed and to induce their settlement and cultivation, in accordance with and subject to the provisions of the act, and it is provided that, as fast as the state may furnish satisfactory proof, according to such rules and regulations as may be prescribed by the Secretary of the Interior, that any such lands have been irrigated, reclaimed, and occupied by actual settlers, patents shall be issued to such state or its assigns for such lands so reclaimed and settled, any surplus of money derived from the sale of any such lands in excess of the costs of reclamation to be held by the state as a trust fund for, and to be applied to, the reclamation of other desert lands therein. By the amendment of June 11, 1896, the state alone is authorized to create liens upon the lands to be segregated for the actual cost and necessary expenses of reclamation, and reasonable interest thereon, until disposed of to actual settlers; and it is further enacted that when an ample supply of water is actualy furnished, in a substantial ditch or canal, or other means of supply, to reclaim a particular tract or tracts of such land, then that patents shall issue for the same to such state without regard to settlement or cultivation. The amendment of March 3, 1901, relates to the time within which reclamation shall be made and completed. The state of Oregon, at its legislative session of 1901, adopted an act accepting the benefits of the Carey act, which provides (section 2) that, after application made as prescribed by any person, company, or corporation for reclamation of government desert lands, the state land board is authorized to make proper application for the lands described to the Secretary of the Interior, and thereupon to enter into contract for the donation and patent from the government, and the board is further authorized to make and enter into such contracts and agreements, and to create and assume such obligations in relation to and concerning said lands, as may be necessary to induce and cause such reclamation thereof, as is required by the contract with the Secretary of the Interior and the acts of Congress alluded to. Section 3 requires that such person, company, or corporation shall file application for any such lands as it is desired to reclaim, and that such application shall be accompanied by maps and plats showing the plan or mode adopted for irrigation and the source of the water supply, being the same in substance and effect as is required by the provisions of the Carey act, all to conform with the rules and regulations of the Secretary of the Interior; the intendment being to authorize and require the applicant to do and perform all things necessary to be done to enable the state to select the lands, and without cost to the state. Section 4 provides for entering into contract with the state land board for carrying into effect the plan adopted, and requires that the person, company, or corporation so entering into such contract shall, among other things, undertake and agree to furnish an ample supply of water substantially in accordance with the act granting the same to the state, and make the proofs exacted by the Secretary of the Interior for the issuance of the patent. Section 5 provides that, when any such contract is entered into with the state board, thereupon the state shall make application to, and enter into a contract with, the Secretary of the Interior for the donation and grant of such lands to the state. The remaining sections of the act have to do with the effect of a noncompliance with the contract entered into with the state land board, and the manner of disposing of the lands subject to reclamation to settlers, and the conveyance to be executed therefor. The bill of complaint shows that on December 5, 1902, the Three Sisters Irrigation Company, under and by virtue of

the acts of Congress and of the legislative assembly of the state of Oregon above noted, relating to the reclamation of arid lands within the state, entered into a contract with the state land board, providing for the reclamation of certain lands in Crook county, Or., and that thereupon the state board applied to the United States for a segregation of the lands desired, and subsequently procured a donation and patent for a portion of them. The bill then further sets up, in effect, that the board was induced to enter into the contract with the said Three Sisters Irrigation Company through false and fraudulent representations and machinations; that the company has not complied with its contract in securing the amount of water agreed to be diverted for irrigation purposes, or any sufficient proportion thereof for reclaiming more than a fractional portion of the lands designated; and that it has virtually abandoned further development of the project, but that it is fraudulently endeavoring to collect moneys from settlers without fulfilling its obligation to the state and to such settlers. The prayer is for a cancellation of the contract, for an accounting, and for general relief. In due time after the filing of the complaint in the state court an application was made for removal into the federal court, and the cause is now presented here on a motion to remand.

A. M. Crawford, Atty. Gen., and John Manning, Dist. Atty. (King, Guerin & Kollock, special counsel), for the State of Oregon.

Seneca Smith and P. L. Willis, for defendants.

WOLVERTON, District Judge (after stating the facts as above). The removal was sought upon the sole ground that a federal question was involved by the controversy; and whether such a question is so involved is the one now presented for consideration and decision.

It may be premised as a legal principle, now firmly settled, that to warrant the removal of a cause from a state court into the federal Circuit Court as one arising solely under the Constitution, laws, and treaties of the United States, the condition or the fact that it so arises must be made to appear from the complainant's statement of his own claim, and not only this, but his bill or declaration must show a case of that character so that an inspection of the record thus limited and circumscribed must determine whether there is cause for removal. Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511; Postal Telegraph Cable Co. v. Alabama, 155 U. S. 482, 15 Sup. Ct. 192, 39 L. Ed. 231; Oregon Short Line, etc., Ry. v. Skottowe, 162 U. S. 490, 16 Sup. Ct. 869, 40 L. Ed. 1048; Galveston, etc., Railway v. Texas, 170 U. S. 226, 18 Sup. Ct. 603, 42 L. Ed. 1017; Third St. & Suburban Railway v. Lewis, 173 U. S. 457, 19 Sup. Ct. 451, 43 L. Ed. 766; Minnesota v. Northern Securities Co., 194 U. S. 48, 24 Sup. Ct. 598, 48 L. Ed. 870. The more difficult thing to determine, however, is when and under what conditions a federal question is involved. The following form of statement relative to the subject has the uniform sanction of the Supreme Court of the United States: I quote from the language of Mr. Justice Waite, in Starin v. New York, 115 U. S. 248, 257, 6 Sup. Ct. 28, 31, 29 L. Ed. 388:

"If from the questions it appears that some title, right, privilege, or immunity on which the recovery depends will be defeated by one construction of the Constitution or a law of the United States, or sustained by the opposite construction, the case will be one arising under the Constitution or laws of the United States, within the meaning of that term as used in the act of 1875; otherwise not."

Numerous cases are cited in support of the principle. The act of 1887, as corrected by the act of 1888, has not changed the law relative

to the particular subject, so that the principle is as readily applicable now as under the old statute. In a later case the same eminent jurist makes use of the following language, which has application to the question first herein discussed, as well as the present one, namely:

"A suit by a state in one of its own courts cannot be removed to a Circuit Court of the United States under the act of 1875, unless it be a suit arising under the Constitution or laws of the United States or treaties made under their authority (Ames v. Kansas, 111 U. S. 449, 4 Sup. Ct. 437, 28 L. Ed. 482), and a suit cannot be said to be one arising under the Constitution or laws of the United States until it has in some way been made to appear on the face of the record that 'some title, right, privilege, or immunity, on which the recovery depends, will be defeated by one construction of the Constitution or a law of the United States, or sustained by an opposite construction.'" Germania Insurance Co. v. Wisconsin, 119 U. S. 473, 7 Sup. Ct. 260, 30 L. Ed. 461.

In this case it was said that the only question presented by the record was one relating to service of summons upon the defendant; and hence that it could not be maintained that a federal question was involved. So in a still later case, which was one in assumpsit upon the common counts for the price of a machine, where, incidentally to a defense, the defendant claimed the invalidity of a certain patent, the court said:

"The action under consideration is not one arising under the patent right laws of the United States in any proper sense of the term. To constitute such a cause the plaintiff must set up some right, title, or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws." Pratt v. Paris Gaslight & Coke Co., 168 U. S. 255, 259, 18 Sup. Ct. 62, 42 L. Ed. 458.

In the celebrated case of Cohens v. Virginia, 6 Wheat. 264, 379, 5 L. Ed. 257, Chief Justice Marshall has this to say:

"A case in law or equity consists of the right of the one party, as well as of the other, and may truly be said to arise under the Constitution or a law of the United States, whenever its correct decision depends on the construction of either."

In further development of the subject, I quote again from the language of Mr. Chief Justice Waite, employed in his opinion in the case of Gold-Washing & Water Co. v. Keyes, 96 U. S. 199, 203, 24 L. Ed. 654:

"A cause cannot be removed from a state court simply because, in the progress of the litigation, it may become necessary to give a construction to the Constitution or laws of the United States. The decision of the case must depend upon that construction. The suit must, in part at least, arise out of a controversy between the parties in regard to the operation and effect of the Constitution or laws upon the facts involved."

And again, says Mr. Justice Harlan, in Railroad Co. v. Mississippi, 102 U. S. 135, 140, 141, 26 L. Ed. 96:

"It is settled law that cases arising under the laws of the United States are such as grow out of the legislation of Congress, whether they constitute the right or privilege, or claim, or protection, or defense of the party, in whole or in part, by whom they are asserted."

While the soundness of the statement as it relates to the defense of the party is questioned by the dissenting opinion of Mr. Justice Miller, who has been sustained by subsequent adjudications of the Supreme

Court, the statement in all other respects has never been challenged that I am aware of. Indeed, Mr. Justice Miller himself concurs to this extent. He says:

"Looking, also, to the reasons which may have influenced Congress, it may well be supposed that, while that body intended to allow the removal of a suit where the very foundation and support thereof was a law of the United States, it did not intend to authorize a removal where the cause of action depended solely on the law of the state, and when the act of Congress only came in question incidentally as part (it might be a very small part) of the defendant's plea in avoidance."

The language of Mr. Justice Harlan is quoted with approval by Mr. Justice Brown in Re Lennon (a later case) 166 U. S. 548, 554, 17 Sup. Ct. 658, 41 L. Ed. 1110. No better instance is afforded of a cause of action growing out of an act of Congress than Osborn v. United States Bank, 9 Wheat. 738, 6 L. Ed. 204. There the bank was incorporated under an act of Congress. The validity of the contract furnishing the subject of the suit depended upon that act, and so the court said:

"The case arises emphatically under the law. The act of Congress is its foundation. The contract could never have been made, but under the authority of that act. The act itself is the first ingredient in the case, is its origin, is that from which every other part arises."

Now, what is this suit as presented by the bill of complaint? Does it arise under or grow out of a law of Congress? It is one to annul a contract entered into between the plaintiff and defendant. The contract depends for its validity upon the Carey act. Without that act there could have been no dealing between the parties upon the basis adopted touching any of the public domain. The entire transaction grows out of, and is dependent for its validity upon, the initial legislation of Congress. That legislation promulgates a plan for reclamation by a state, and authorizes the state to contract with a person, company, or corporation to carry out whatever project may be agreed upon for doing the reclamation work. The state adopts the plan of Congress, and provides by its own enactment for contracting with individuals, firms, or corporations for reclaiming the desert lands, all in accordance with the provisions of Congress, and thereupon enters into the contract in question, and alleges that in doing so it complied with both the act of Congress and that of the legislative assembly of the state. All has proceeded in pursuance of the act of Congress, and the litigation arises upon an instrument which is the result of such a proceeding. It seems perfectly clear and consequential, therefore, that the suit has grown out of the legislation or a law of Congress. True, the especial grievance complained of is the alleged breach of the contract, and it might be that the ultimate issue would simply resolve itself into one of fact as to whether the defendant has complied with the stipulations of the agreement. But such stipulations are essentially obligations to comply with the provisions of the Carey act, and the suit is nevertheless one touching the right or privilege of the complainant accorded under the act, and the act itself is certainly involved by the litigation. It is hardly possible that the state can maintain its rights and privileges thus granted without in some way calling to its aid some, if not many, of the pro-

visions of the act, and drawing into controversy the proper interpretation and rendering of such provisions.

So I must conclude that the removal was properly granted, and the motion to remand will be denied.