## TELLURIDE POWER TRANSMISSION COMPANY *v.* RIO GRANDE WESTERN RAILWAY COMPANY.

### ERROR TO THE SUPREME COURT OF THE STATE OF UTAH.

No. 70. Argued December 8, 11, 1899.—Decided January 8, 1900.

In a case brought up by writ of error from the Supreme Court of a State, it appeared from a supplemental transcript of the record that proceedings for a removal of the case to the Circuit Court of the United States were taken in the court of original jurisdiction, and were denied; but that no question regarding these proceedings was made in the Supreme Court of the State, and the supplemental transcript was not filed in such Supreme Court until after the case had been decided there. *Held:* that as no certiorari was issued to bring it up, and no motion or order was made for leave to file it, it could not be considered here.

By Rev. Stat. section 2339, whenever, " by priority of possession," rights to the use of water for mining purposes have vested and accrued, and the same are recognized by local customs and laws, " the possessors and owners of such vested rights shall be maintained and protected in the. same." *Held:* that a question of fact, as to which party had priority of possession, was not a Federal question.

The jurisdiction of this court in cases brought up by writ of error to a state court does not extend to questions of fact, or of local law, which are merely preliminary to, or the possible basis of, a Federal question.

THIS was a suit brought by the Rio Grande Western Railway Company, a corporation of Utah, in the District Court of the Fourth Judicial District of Utah, against the Telluride Power Transmission Company and two individual defendants, named Nunn and Holbrook, to confirm and quiet the title of the plaintiff company to certain unsurveyed public lands of the United States in the county and State of Utah.

The bill of complaint was filed September 12, 1896, and set forth that the railway company was authorized to construct and operate a railway in Provo Cañon, Utah, on either of two routes described; that in March, 1896, it commenced the survey and location of a line of railroad through the cañon, which line passed over certain tracts of unsurveyed lands of the United States, of which one Murphy was in possession, prior to the survey; that it became the owner of this right of way,

under an act of Congress affirming such rights, subject only to its obligation to pay the occupant the damages to his possessory right, which he subsequently released. The plaintiff further alleged that, while lawfully in possession of the land, the defendants set up an adverse claim, and by threats and force stopped its work and denied its right to use the land for railway purposes. A judgment was demanded that the adverse claim be decreed unfounded; that the right of the plaintiff be confirmed, and the defendants, be enjoined from asserting their adverse claim or interfering with the plaintiff's possession.

It would appear from a supplemental transcript of the record filed in the Supreme Court of Utah, after its judgment upon the merits, that, prior to any further action being taken, and on or about December 5, 1896, the defendants, the Telluride Power Transmission Company, and the individual defendant Nunn, filed a petition for a removal of the case to the Circuit Court of the United States, on account of diversity of citizenship, except as to defendant Holbrook, who was charged with having no interest in the controversy, and with being a mere nominal party, and made such for the purpose of ousting the jurisdiction of the Federal court. Upon hearing the arguments of counsel, the petition was denied.

After filing an objection to the further exercise of jurisdiction by the state court, the defendants demurred to the bill of complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled. No exception was taken by the defendants, who united in an answer, in which it was alleged that the defendant Holbrook had no interest in the subject-matter in controversy. The answer further denied the material allegation of the complaint, as well as the existence of the plaintiff as a corporation, and averred that the greater part of the bed of the cañon was unsurveyed public land; that the defendants took possession of a large portion of these lands for the purpose of constructing a reservoir, and of other lands for canals, flumes and small dams, in order to carry out the purpose of the enterprise for which they were chartered; that, in 1894,

they entered upon Provo Cañon and made surveys for the purpose of ascertaining whether water power could be obtained for the production of electric current, and whether by storage in reservoirs, water could be obtained for agricultural and mining purposes; and that thereafter they took possession of a large part of the public domain, lying in the said cañon, including the land in dispute, for the purpose of constructing a reservoir thereon; that, in order to complete this enterprise, they would require the whole of the cañon, and that, if the plaintiff or any one else should construct a railroad through the cañon, this enterprise would be defeated; that in 1895 they began the construction of a flume, in order to obtain power with which to aid in the construction of a dam eighty-five feet high at Hanging Rock, the latter dam being intended to retain water for power and irrigation purposes; that they made surveys of the contour of the reservoir to be formed by the dam; that in the spring of 1896 they prosecuted the work upon the said surveys and flume; that prior to the plaintiff's entry into Provo Cañon they, the defendants the Telluride Company and Nunn, had entered upon the unoccupied, unsurveyed public land therein, with the purpose of constructing an expensive dam and reservoir; and that, on September 12, 1896, when this suit was commenced, and for more than two years prior thereto, they were and had been in actual possession of the land in dispute.

The case was tried by the court without a jury. Findings of fact and conclusions of law were made by the court to the effect that the plaintiff had prior possession of the land, and that the adverse claim of the defendants was unfounded. A judgment was thereupon entered in favor of the plaintiff; its title to the lands in question confirmed and quieted; the adverse claim adjudged invalid, and the defendants enjoined from setting up claims or exercising rights adverse to those of the plaintiff. From this judgment, defendants, the Telluride Company and Nunn, took an appeal to the Supreme Court of Utah, which affirmed the judgment of the District Court. Whereupon these defendants sued out a writ of error from this court, assigning, amongst other things, as error, the failure of the

District Court to remove the case to the Circuit Court of the United States.

*Mr. Arthur Brown* for plaintiffs in error. *Mr. H. P. Henderson* and *Mr. William Story* were on his brief.

*Mr. James H. Hayden* for defendant in error. *Mr. Joseph K. McCammon* and *Mr. R. Harkness* were on his brief.

MR. JUSTICE BROWN delivered the opinion of the court.

1. The question of the removal of the case to the Federal court may be disposed of without difficulty. The facts are that, on January 21, 1898, four months after the case was argued in the Supreme Court, and six weeks after it was decided, there was filed in the Supreme Court of Utah a supplemental transcript containing the original petition for removal to the Circuit Court, the bond of the petitioners, the order of the court denying the petition, and a protest of the defendants against the further exercise of jurisdiction by the state court. But it does not appear how this supplemental record came to be filed. No certiorari was issued to bring it up. No motion was made for leave to file it. No order was entered permitting it to be filed, and for aught that appears, it was procured by some unauthorized person and thrust upon the files without notice to either party, without consultation with the court, and for the purpose of creating a defence which was never called to the attention of the Supreme Court. The transcript, upon which the case was heard in the Supreme Court, was stipulated by the attorneys for the respective parties to be "a full, correct, true and complete transcript of the proceedings in said cause on appeal, and of all the pleadings in said cause, of all orders on demurrer, of the findings of the court and conclusions therefrom, and of the judgment, and of notice of intention to move for a new trial, and of the notice of appeal, and of the bill of exceptions and statement of motion for new trial." In short, this supplemental transcript is a mere excrescence. It is scarcely necessary to say that, under such circumstances, it cannot be considered here. *Goodenough Mfg. Co.* v. *Rhode Island Horse Shoe Co.*, 154 U. S. 635.

2. If there be any Federal question in the case, it arises from Rev. Stat. sec. 2339, which reads as follows :

" Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same ; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed ; but whenever any person, in the construction of any ditch or canal, injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage."

It is insisted that the case falls within the first category of cases specified in Rev. Stat. sec. 709, " where is drawn in question the validity of a treaty or statute of, or an authority exercised under, the United States, and the decision is against their validity." But the cases in which this clause has been applied are those wherein the validity of a statute, or of an authority exercised by a public official of the United States has been called in question; and not those where a general right is set up under a statute. *McGuire* v. *Commonwealth*, 3 Wall. 387 ; *Millingar* v. *Hartupee*, 6 Wall. 258 ; *Daniels* v. *Tearney*, 102 U. S. 415 ; *Sharpe* v. *Doyle*, 102 U. S. 686 ; *Buck* v. *Colbath*, 3 Wall. 334. The use of the word " authority " in the third clause in connection with the word " commission " favors the theory that a personal authority was intended, and not the assertion of an abstract right created by a statute.

We think the case falls more properly within the third clause, as one wherein a title or right is claimed under a statute of the United States. In such case such title or right must be " specially set up and claimed " before judgment in the state court. This was not done in the case under consideration. In its complaint, the plaintiff railway company makes no allusion to this act, but relies upon an act of Congress respecting a right of way for railroads through public lands, act of March 3, 1875, c. 152, 18 Stat. 482, and upon cer-

tain provisions of the local laws of Utah. The statute is not set up in the answer of the defendants, who relied upon their priority of possession. So, also, in the thirty-three assignments of error, filed by the defendants in the state Supreme Court, no reference is made to an act of Congress as the basis of their right, and no intimation is made that the District Court erred in the construction or applicability of any such act.

In the opinion of the Supreme Court, it is stated that the errors alleged raised the questions, first, whether there was not a statutory forfeiture of the plaintiff's charter, in consequence of a failure to complete and put its road in operation; second, whether plaintiff had the lawful right to locate its right of way in the cañon, and had located it over the land in dispute, and was in actual possession thereof, when defendant interfered; third, whether the law required the plaintiff to file with the register of the land office a profile of its route; and, fourth, whether the defendants made such appropriation, or had such possession of the land in dispute as authorized them to hold it against the plaintiff. After discussing the validity of the plaintiff's charter, the powers granted by it, and the possession of the plaintiff, the opinion proceeds to consider whether the defendants had any right to the land in dispute, and in this connection finds that they might have obtained a vested right to own unappropriated waters of the Provo River for the purposes specified in their charter, and that such right is recognized and acknowledged by Rev. Stat. sec. 2339 above cited, but professed itself "unable to find from a preponderance of the evidence in the record, that the defendants, or either of them, had appropriated the land in dispute, and that they were, or that either of them was, in actual possession of it when the plaintiff located its right of way, took actual possession, and engaged in grading it. We cannot regard the plaintiff as a mere intruder on the defendants' possession, nor can we hold that they had a right to prevent the plaintiff's employés from grading it and to eject plaintiff from actual possession. It is true that defendants had surveyed for dams and reservoirs at different points on the river, but they had not taken and did not hold actual possession of the land in dispute."

The petition in error for the first time set up a right and authority under the mining laws of the United States, Rev. Stat. sec. 2339, and charged that the decision of the trial court, as well as of the Supreme Court of the State, was against the authority and validity of the claim of the defendants. The assignments of error turn principally, if not wholly, upon the finding of prior possession on the part of the plaintiff, the refusal of the court to remove the cause, and its ruling that the plaintiff had the right under its charter to construct the road.

From this *résumé* of the proceedings, it is evident that there was no denial to the defendants of any right they may have possessed by virtue of a priority of possession. The statute (Rev. Stat. sec. 2339) provides that "whenever, by priority of possession, rights to the use of water" for certain purposes "have vested and accrued, and the same are recognized and acknowledged by the local customs, laws and decisions," the owners of such vested rights "shall be maintained and protected in the same," and their right of way for the construction of ditches and canals acknowledged and confirmed. But in order to establish any rights under the statute it was incumbent upon the defendants to prove their priority of possession, or at least to disprove priority on the part of the plaintiff. The question who had acquired this priority of possession was not a Federal question, but a pure question of fact, upon which the decision of the state court was conclusive. No construction was put upon the statute; no question arose under it; but a preliminary question was to be decided before the statute became material, and that was whether defendants were first in possession of the land. Even if priority of possession had been shown, it would still have been necessary to prove that defendants' right to the use of the water was recognized and acknowledged by the local customs, laws and decisions, all of which were questions of state law.

In this connection, an attempt is made to distinguish between the findings of fact and the conclusions of law. Defendants concede that they are bound by the findings of fact upon the subject of possession, but contend that they are not

bound by the conclusions of law, which are as follows : First, that the plaintiff, prior to the commencement of the suit, had the possession, right of possession, and the inchoate title of the lands described ; second, that the defendant company had no power in Utah to engage in generating electric power for sale ; third, that defendants never had the title, possession or right of possession, to the lands, or acquired any vested right in accordance with the laws or customs of the country, or any right to flow or otherwise occupy said lands, or prevent the use and occupation thereof by the plaintiff railroad company, and that ·their adverse claim was unfounded ; fourth, that the plaintiff was entitled to judgment.

It is quite evident that these findings involved either questions of fact or questions of local law, and that while the finding of the ultimate fact of prior possession may possibly have been a legal conclusion, it was not a Federal question.   In this particular the case is covered by *Eilers* v. *Boatman*, 111 U. S. 356, which was an action for the settlement of adverse claims to mineral lands.   The case turned upon the priority of location, which the court held was a matter of fact, although the court below called it a conclusion of law.

The case under consideration in its material aspects resembles that of *Bushnell* v. *Crooke Mining Co.*, 148 U. S. 682, which was an action of ejectment growing out of conflicting and interfering locations of mining claims.   As stated by Mr. Justice Jackson, "the question presented on the trial of the controversy under the pleadings was purely one of fact, and had reference to the true direction which the Monitor lode or vein took after encountering a fault, obstruction or interruption at a point south of the discovery shaft sunk thereon.   .   .   .   After the decision had been rendered by the Supreme Court of the State, a petition for rehearing was presented by the plaintiffs in error, which, for the first time, sought to present a question whether section 2322 of the Revised Statutes gave to the appellants 'the exclusive right of possession' and enjoyment of all other veins or lodes having their apexes within the Monitor's surface ground." The court held it to be " plainly manifest that neither the plead-

ings nor the instructions given and refused present any Federal question, and an examination of the opinion of the Supreme Court affirming the action of the trial court as to instructions given, as well as its refusal to give instructions asked by the defendants below, fails to disclose the presence of any Federal question." In this connection Mr. Justice Jackson quotes the remark of the Chief Justice in *Cook County* v. *Calumet & Chicago Canal Company*, 138 U. S. 635, 653: " The validity of a statute is not drawn into question every time rights claimed under such statute are controverted, nor is the validity of an authority every time an act done by such authority is disputed." See also *Doe* v. *City of Mobile*, 9 How. 451.

The position of the plaintiffs in error is that, as their whole case depended upon the rights asserted by them under section 2339, and that, as the courts decided adversely to the rights claimed by them, there was no necessity of a special reference to that statute, relying in this connection upon such cases as *Miller* v. *Nicholls*, 4 Wheat. 311; *Satterlee* v. *Matthewson*, 2 Pet. 380, 410, and others cited in *Columbia Water Power Co.* v. *Columbia Electric Street Railway Co.*, 172 U. S. 475, 488, in which we have held that, if it sufficiently appear from the record that the validity of a state statute was drawn in question as repugnant to the Constitution of the United States and the question was decided, or such decision was necessarily involved in the case, and the case could not have been determined without deciding such question, the fact that it was not in terms specially set up and claimed in the record is not conclusive against a review of the question here. But the difficulty in this case is that, before it could be said that any right or title under a statute of the United States had been denied, it was necessary to establish as a question of fact priority of possession on the part of the Telluride Company, as well as conformity to local customs, laws and decisions. These were local and not Federal questions. The jurisdiction of this court in this class of cases does not extend to questions of fact or of local law, which are merely preliminary to, or the possible basis of, a Federal question.

The writ of error must, therefore, be
*Dismissed.*