# TELLURIDE POWER TRANSMISSION COMPANY v. RIO GRANDE WESTERN RAILWAY COMPANY.

## ERROR TO THE SUPREME COURT OF THE STATE OF UTAH.

No. 72.  Argued November 10, 1902.—Decided January 5, 1903.

It is sufficient answer to a claim that a statute of Utah amounts to a deprivation of the rights under the Fourteenth Amendment that it appears for the first time in the petition for a writ of error from this court and that the claim of invalidity was not raised in the District Court, nor assigned as a ground of error on the appeal to the Supreme Court of the State, and that that court did not pass upon the action of the District Court in view of the unconstitutionality of the statute.

Where the Supreme Court of Utah has construed the statutes and constitution of Utah to the effect that a foreign corporation had no existence as a corporation in the State, and could acquire, therefore, no rights as such, and that an individual connected with the corporation had no independent rights in the premises, these conclusions do not involve the decision of Federal questions, but only the meaning and effect of local statutes and a finding of fact, neither of which is reviewable by this court.

Whatever rights the plaintiff in error in this action may have had under § 2339, Revised Statutes of the United States, depended upon questions of fact and of local law, which are not reviewable by this court.

Where the state court refuses to remove a cause to the Circuit Court and afterwards on filing the record in the Circuit Court that court remands the cause to the state court, if there was any error in the ruling of the state court it becomes wholly immaterial. *Missouri Pacific Railway* v. *Fitzgerald*, 160 U. S 556.

THIS is a suit to condemn land in the exercise of the right of eminent domain, under the laws of Utah, and was brought in the District Court of the Fourth Judicial District of that State. The complainant in the suit, defendant in error here, was a corporation of Utah. The plaintiff in error was a Colorado corporation. Ferguson and Holbrook were citizens of Utah; Nunn was a citizen of Colorado. The bill alleged the corporate character of the complainant, and the necessity of the land for the use of the railroad. The route of the road was set out, and that it would pass over a tract of unsurveyed

lands of the United States which could not be accurately described, but which, when surveyed, would proximately be parts of the S.W. $\frac{1}{4}$ of section 27, W. $\frac{1}{2}$ of S.W. $\frac{1}{4}$ of 26, N.E. $\frac{1}{4}$ of the S.W. $\frac{1}{4}$ section 26, and N.W. $\frac{1}{4}$ of the S.E. $\frac{1}{4}$ of section 26; T. 5, S. R. 3, east Salt Lake meridian, and lying in Provo Cañon, and along and near Provo River. That prior to plaintiff's survey Ferguson had or claimed some possessory right by occupation of said land or some part thereof, but on account of the land being unsurveyed the number of acres claimed by Ferguson could not be given, but the lands he claimed to occupy, it was alleged on information and belief, commenced at a fence between them and lands below and southeasterly, occupied by A. L. Murphy, and extends northeasterly up the cañon and river, a distance of about 4800 feet, to a point which by estimation would be the northeast corner of the northwest quarter of the southeast quarter of section twenty-six, when the land should be surveyed. It was alleged that the line of the railroad was on and over said lands, and that plaintiff had appropriated for railroad purposes a strip of land two hundred feet wide, containing twenty-two acres, more or less: that such strip was necessary for the construction and operation of the road. A map of the line of road was attached to the bill.

The following were the allegations of the bill as to the other defendants:

"And on information and belief the plaintiff alleges that the defendants The Telluride Power Transmission Company, L. L. Nunn and L. Holbrook assert and claim some interest in or to said land appropriated by the plaintiff, or in the possessory right to the same or to some easement therein.

"That the defendants are the only persons and parties in possession of said land or any part thereto, or claiming any right or title therein or thereto, so far as is known to the plaintiff.

"And the plaintiff alleges that it cannot contract for the purchase of said tract of land required for its railroad as aforesaid. That the defendant W. W. Ferguson refuses to sell, alleging that he has contracted to sell to the other defendants

or some of them; that the other defendants refuse to sell the same or any easement therein or possessory right thereto on the pretence that they want said land and propose to flow the same for power purposes. And on information and belief the plaintiff alleges that the claimed interest of the defendant Holbrook, if any, is held by him as trustee for the defendants, The Telluride Power Transmission Company and L. L. Nunn."

The prayer was for the ascertainment of the extent of occupation by defendants and their damages and the condemnation of a right of way of one hundred feet wide on each side of the center line of plaintiff's survey, on and over the land occupied by defendants, or any of them, and for general relief.

The Telluride Power Transmission Company and the defendant Nunn petitioned for the removal of the cause to the Circuit Court of the United States for the District of Utah on the ground of separable controversy. The petition alleged that they were citizens and residents of Colorado, and the plaintiff was a resident and citizen of Utah; that Holbrook had no interest in the controversy, and that Ferguson had contracted to sell to them the lands involved. The petition was denied. Subsequently said corporation and Nunn filed a certified transcript of the proceedings in the Circuit Court of the United States for the District of Utah, but on motion of plaintiff's attorney the cause was remanded to the District Court of the State. The order remanding was made on the 29th of March, 1897, and a copy thereof filed in the District Court, April 29, 1898, the day the trial commenced.

In that court the defendants answered—Ferguson separately, the other defendants uniting. The answers need not be quoted. It is enough to say that they put in issue the allegations of the bill as to the organization and existence of the plaintiff corporation, its authority to build a railroad up Provo Cañon, the survey of its line in March, 1896, and its location. It was alleged "that certain persons claiming to be the agents of said alleged plaintiff had, during the summer and fall of 1896, run uncertain and irregular lines up said Provo Cañon, cut brush and made slight and unimportant excavations, which, from their character, gave no evidence of any purpose or design upon the

part of any person to survey or construct any line of railroad;"
and that such line " passed over and into certain tracts of un-
surveyed land."   Ferguson's location upon certain unsurveyed
lands was alleged, with the view of obtaining title thereto as
soon as the lands could be entered, and that he had erected
improvements thereon and had contracted to sell the same to
the Power Company and Nunn for the purpose of enabling
them to " use the same for a reservoir upon which to store water
for electrical power, manufacture and agricultural purposes."

It was alleged that the Power Company was a Colorado
corporation and its stockholders citizens of the United States,
and that it was organized among other things " for the purpose
of acquiring by purchase, or otherwise, water rights, ways and
power and to work, develop and utilize water rights, power,
ways, mills, etc., for such business and enterprises as appertain
to the same."

The adaptability of Provo Cañon for supplying and storing
water was alleged, and the utility of furnishing light and elec-
trical power and heat to neighboring industries.   That said
defendants have been engaged for years in acquiring water
rights, and in the year 1894 entered Provo Cañon, and had ex-
tensive surveys made, and prosecuted the same with diligence;
that the greater part of the lands in the cañon were unoccu-
pied and unsurveyed, and of little or no value except for the
purposes designed by the defendants; " that defendants be-
gan the construction of a flume and made the necessary exca-
vations therefor in order to obtain power with which to aid in
the construction of a large dam by which to reservoir and
hold back the waters of said river for power and irrigation
purposes; that said defendants made the necessary surveys for
canals for the purposes aforesaid and surveyed a reservoir, and
showed upon the surveys the contour of the line thereof, and
prosecuted with due diligence the work necessary for the con-
summation of the enterprise entered upon; that in the winter
and early spring of 1896 the said defendants vigorously prose-
cuted said work and expended large sums of money in the
execution of said design and purpose; that long prior to 1896
in good faith they entered upon said public unsurveyed lands

of the United States with the design and specific purpose of constructing in said cañon at a point at or near what will be, when surveyed, as nearly as defendants can determine, the southwest quarter of the southeast quarter of section 27, township 5 south, range 3 east, a dam by which to reservoir and store said surplus waters of Provo River; that they surveyed said reservoir, extending the lines of survey up said river from said point to a point at or near the northeast corner of the northeast quarter of the southwest quarter of section 7, township 5 south, range 4 east, in Wasatch County, Utah; and said defendants have further located and surveyed the necessary canals connected with said reservoir for the purpose of carrying into effect the enterprise and business entered upon by them; that since the year 1894 as aforesaid, the said defendants have been in the actual possession and occupation of the land in said cañon between said points, and which is intended by them as a reservoir, and also other portions of the public domain lying west of said reservoir and in said cañon, except that the claim of defendant Ferguson, lying within said reservoir, has been occupied by said Ferguson as a residence, but defendants allege having paid said Ferguson a large sum of money and to have obtained a contract from him by which he covenants and agrees to convey all his interest in the premises so occupied by him to the said defendants."

The good faith of the defendants was alleged, and that their possession was open and notorious, and that they with like faith prosecuted their enterprise, and expended therein $50,000, and by reason of their dam they would be able to obtain more than 8000 horse power, which would be sufficient to supply said Utah County and the towns and cities therein with power for heating, lighting and manufacturing purposes, and would also be able to supply water for irrigation purposes.

The acts of the plaintiff were averred as follows:

" Defendants further aver that said plaintiff some time in the summer of 1896 wrongfully, and for the purpose of annoying the said defendants and interfering with their project and enterprise, came into Provo Cañon and ran irregular, indefinite and devious lines through a portion of said cañon, pretending

that it was the purpose to establish a railroad therein, and defendants allege that said lines so run were so irregular and uncertain, so shifting and changing, as to indicate no such purpose; that in two or three points in said cañon various persons claiming to represent plaintiff made slight excavations, but the character of the same was such as to indicate no purpose to construct a railroad or to perform intelligently and with a fixed or settled purpose any work or enterprise.

"Defendants allege upon information and belief that said plaintiff has no purpose or design to construct any railroad, but that what has been done has been with a view to annoy defendants and to prevent said defendants from constructing their reservoir and canals and obtaining electrical power for the purpose aforesaid, and for the purpose of preventing any legitimate railroad undertaking from being consummated, if the operation of a line through said cañon was essential.

"Defendants allege that the construction of a railroad along the bottom of said cañon would be destructive of their enterprise and reservoir and power, and would prevent them from carrying out the work in which they have been engaged long prior to the spasmodic, uncertain and *mala fides* entry of said plaintiff into said cañon, and in which they are still engaged."

It was alleged that plaintiff knew of the intention and character of defendants' work, and to permit it to condemn the land and to deprive defendants of its possession would be a "grievous wrong and fraud upon their rights."

It was averred that Holbrook had no interest in the controversy.

The allegations of defendants were not only set up in their answers but were also made the subject of cross bills.

A jury was empaneled, and under the instructions of the court they were confined to the consideration of compensation and damages. They returned a verdict assessing the value of the strip of land taken by the railroad at $575; damages to the remaining land, $500; cost of fencing, $525.30, and cost of cattle guards, $42.53. Benefits were assessed at nothing.

There were many instructions asked by defendants which the court refused. They also objected to the instructions which

the court gave. Subsequently the court rendered its judgment, in which it found and adjudged as follows:

" This action having come on for hearing before the court, and a jury empaneled to assess compensation and damages, on the 18th day of April, 1898, and having been heard on that and the succeeding day, it is now found and determined that the plaintiff is a railroad corporation as alleged in the complaint and with a franchise to construct and operate lines of railway and telegraph as alleged, including a franchise to construct a line of railroad and telegraph on and over lands described in the complaint and sought to be condemned.

" That the plaintiff filed a copy of its articles of incorporation and due proof of its organization with the Secretary of the Interior and the same were duly approved by the Secretary on the 27th day of May, 1890, under the act of Congress of March 3, 1875, granting the right of way to railroad companies.

" That the lands sought to be condemned and the adjoining lands are unsurveyed public lands of the United States, and at the time of the beginning of the suit were occupied by William W. Ferguson, who has since died.

" That the plaintiff on the 8th day of July, 1896, completed the survey and location of its line of railroad on and over the lands sought to be condemned and hereinafter described.

" That the said defendant L. Holbrook has disclaimed any interest in the lands.

" That neither on or before, or since the 8th day of July, 1896, has the defendants The Telluride Power Transmission Company and L. L. Nunn or either of them had any possession of the lands sought to be condemned, or by appropriation or otherwise any right to raise the waters of Provo River so as to flow the same or any part thereof, or any right to the said lands or possession thereof as part of a reservoir site, and to raise the waters of said river so as to flow the same would be an unreasonable use of said waters and the public lands and easements in the cañon adjacent to said river.

" And it is now adjudged by the court:

" That the use to which the land sought to be acquired by plaintiff is to be applied in the construction and operation of a

line of railroad and telegraph for which the lands are to be used for a right of way, and that it is a public use authorized by law ; and that the taking and condemnation thereof is necessary to such use. That said lands have not already been appropriated to any other public use.

" That none of the defendants by pleadings or otherwise is seeking condemnation of said lands for a reservoir or other public use, and the lands cannot be used for both as a reservoir site as claimed and a railroad, and there is no common use either public or private to be adjusted."

The judgment then recited the findings of the jury and directed the money to be paid into court for subsequent distribution among those who should be entitled thereto. This judgment was afterwards set aside, at the request of defendants, to enable them to present findings, which they subsequently did. The court, however, refused to find as requested, and reinstated its former judgment and findings. The findings requested presented the allegations of the answers as established by the evidence, and also presented, as established, the feasibility of building the railroad upon lines which would not interfere with the projected works of the defendants.

The plaintiff paid into court the award of the jury, and a final order of condemnation was made. The case was taken to the Supreme Court of the State, and the judgment of condemnation was there affirmed. 23 Utah, 22. The Chief Justice of the State allowed this writ of error.

On appeal to the Supreme Court of the State there were eighty-three assignments of error, two of which were based on rulings in regard to the jury and forty-five of which were based upon instructions to the jury or refusals to instruct the jury. The rest of the assignments except three were based on the findings, and refusals to find, as requested by defendants. The last three assignments were as follows :

" 81. The court erred in denying defendants' petition to remove said cause to the Federal court.

" 82. The court erred in assuming to retain jurisdiction over said cause and proceeding to try the same after the filing of the petition on the part of the defendants to remove said cause

to the Circuit Court of the United States for the District of Utah.

"83. The court erred in holding and deciding that it had jurisdiction to hear, try and determine said cause."

In the petition for writ of error it was alleged that errors were committed by the Supreme Court of Utah, in that in "the final judgment and decision of the Supreme Court of the State of Utah the said court erred in holding and deciding and determining that these defendants, both citizens of the State of Colorado, one a corporation existing under the laws of the said State of Colorado and the other a natural person, did not have the authority or the right to locate and appropriate public lands of the United States upon the Provo River flowing through said public lands of the United States for the purpose of maintaining a dam with which to generate power to create electricity, and such decision was contrary to the protection afforded these defendants by the Fourteenth Amendment of the Constitution of the United States. The decision likewise violated the rights of the said defendants under section 2, article 4, of the Constitution of the United States: 'The citizens of each State shall be entitled to all privileges and immunities of citizens in the several States.'

"And the petitioners further say that in the final judgment and decree of the said Supreme Court of the State of Utah and of the District Court of the Fourth Judicial District in and for the county of Utah, State of Utah, a decision was had against a right and privilege of these defendants claimed under a statute of the United States, which right and privilege was specially set up and claimed by these said defendants in said cause. That by the answer in said cause the defendants allege that they had the right and authority from the United States and were exercising it to erect a dam in Provo Cañon for the purpose of creating power to transmit electricity. That said right and authority existed under the mining laws of the United States originally enacted in 1868 and amended in 1872, Revised Statutes, section 2339, and the said right was denied by the said plaintiff and the said District Court of the Fourth Judicial District, and the said Supreme Court of Utah on appeal held

that these defendants had no right to erect such dam on the public unsurveyed lands of the United States.

"And the petitioners further say that the said Fourth Judicial District Court in and for the county of Utah, State of Utah, and the said Supreme Court of the State of Utah in affirming the said decision on appeal, have decided against the right of these defendants existing under the statute of the United States to remove the said cause from the said state court above named to the United States court, which claim was exercised duly by the petition and bond filed in due time by these defendants in the Fourth Judicial District Court before the time expired for these said defendants to appear and answer to the suit brought against them by the said plaintiff in this cause."

In the assignments of error those grounds are repeated and errors are assigned upon the rulings on instructions by the District Court and the action of the Supreme Court in sustaining those rulings.

Section 2339, referred to in the assignments of error, is as follows:

"Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed; but whenever any person, in the construction of any ditch or canal, injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage."

*Mr. Henry P. Henderson* for plaintiffs in error. *Mr. S. A. Bailey* and *Mr. Arthur Brown* were with him on the brief.

*Mr. Joel F. Vaile* for defendant in error. *Mr. R. Harkness* and *Mr. E. O. Wolcott* were with him on the brief.

MR. JUSTICE McKENNA, after making the foregoing statement, delivered the opinion of the court.

The defendant in error has moved to dismiss the case for want of jurisdiction in this court. The essential issues of fact were decided against the plaintiffs in error, and the case, therefore, seems to be brought within the ruling in *Telluride Power Co. v. Rio Grande Western Railway Co.,* 175 U. S. 639. The corporations in this case were parties in that case and so were Nunn and Holbrook. The same public interests were in opposition, and the Power Company relied for rights in Provo Cañon on section 2339 of the Revised Statutes of the United States, as the company does in this case, and the rulings on those interests and rights constituted the vital questions in that case as they do in this. It was pointed out there that " in order to establish any rights under the statute it was incumbent upon the defendants to prove their priority of possession, or at least to disprove priority on the part of the plaintiff." And it was observed : " The question who had acquired this priority of possession was not a Federal question, but a pure question of fact, upon which the decision of the state court was conclusive. No construction was put upon the statute; no question arose under it; but a preliminary question was to be decided before the statute became material, and that was whether defendants were first in possession of the land. Even if priority of possession had been shown, it would still have been necessary to prove that defendants' right to the use of the water was recognized and acknowledged by the local customs, laws and decisions, all of which were questions of state law."

After discussion it was also observed : " But the difficulty in this case is that, before it could be said that any right or title under a statute of the United States had been denied, it was necessary to establish as a question of fact priority of possession on the part of the Telluride Company, as well as conformity to local customs, laws and decisions. These were local and not Federal questions. The jurisdiction of this court in this class of cases does not extend to questions of fact or of

local law, which are merely preliminary to, or the possible basis of, a Federal question."

Manifestly if the plaintiffs in error obtained no rights under section 2339 none could be taken from them. But a violation of the Fourteenth Amendment of the Constitution of the United States is claimed by both the Power Company and by Nunn, and the latter claims besides that he was denied the privileges to which he was entitled as a citizen of the United States.

The deprivation of the rights of the plaintiffs in error under the Fourteenth Amendment was accomplished, it is said, by the court's assuming to try without the assistance of the jury the questions of fact upon which those rights depended. In other words, that the District Court assumed to determine, and did determine, all conflicting or adverse claims to the property, and submitted only to the jury the questions of compensation and damages. This action, it is asserted, was contrary to the meaning of the statute of the State, or if not so, the statute is void.

With the latter objection only we are concerned, and it is enough to say in answer to it that the invalidity of the statute was not raised in the District Court, nor assigned as a ground of error on the appeal taken to the Supreme Court of the State. It appears for the first time in the petition for the writ of error from this court. Nor did the Supreme Court of the State pass upon the action of the District Court in view of its unconstitutionality. Indeed, it found it unnecessary to pass upon that action except in the most general way. The court said:

"The appellants assign many errors upon the refusal of the court to instruct the jury as requested, upon the instructions given to the jury, and upon the facts found by the court. Under the view taken these questions become unimportant as neither of the appellants were injured in their rights; nor were either entitled to any damages under the facts shown in this case. The instructions were, at least, as favorable to the appellants as they had a right to expect."

It is further urged that the decision of the Supreme Court deprived plaintiffs in error of their rights under the Constitu-

tion of the United States, and under section 2339 of the Revised Statutes, in holding, as it is claimed, that neither the Power Company nor Nunn had any authority or right to locate and appropriate public land of the United States upon the Provo River for the purpose of maintaining a dam to store water with which to generate power to create electricity.

The Supreme Court in its opinion referred to its decision in the former case between the parties, 16 Utah, 125; 175 U. S. 639, not, however, as conclusive, but " as authority, and as determining the law in this case, in so far as it decided the same questions involved in the present case," and the court stated that it had been decided in that case, among other things, " that the defendants (plaintiffs in error here) had not appropriated the land in dispute, and that neither of the defendants was in actual possession of the land when the plaintiff located his right of way, took possession and engaged in grading it."

Then passing upon the rights of the Power Company and Nunn, the court said:

" The record shows that the San Miguel Gold Mining Company was organized in Colorado, February 7, 1891, with a capital of $15,000,000, and was authorized to acquire by purchase, lease, or otherwise, mining property, together with water rights, power, ways, mills and mill sites; to develop, mine, work and utilize the same, and to carry on a general mining business. Its principal office is in Telluride, Colorado, and its principal business is to be done in Colorado, and its articles provide that part of its business may be done in Boston, Mass., and its principal office kept here. The stock is non-assessable, and no requirements for payments of subscription are incorporated in it. In February, 1896, an amendment of its articles was made and filed with the Secretary of State in Colorado changing the name of the company to the Telluride Power Transmission Company. Appellant Nunn was its manager.

" Section 427, p. 614, 1 Col. Stat. 1893, among other matters provides that, ' When said corporation shall be created under the laws of this State for the purpose of carrying on part of its business beyond the limits thereof, such certificate shall state that fact.' Subdivision 2 of this section provides that

the object for which the company is created shall be stated. Section 498 authorizes Colorado corporations authorized to do business out of the State, to accept the laws of the other States and there exercise its franchise.

" So it appears that the appellant company is a mining corporation organized in Colorado, without complying with the statute and with no other powers to do business as such in this State. Without complying with the constitution and laws of this State with respect to foreign corporations, it unlawfully assumes to appropriate both land and water within this State. This must be so, because under section 2, article 12, of the constitution of this State, no corporation in existence in this State when the constitution is adopted shall have the benefit of its laws, without filing with the Secretary of State an acceptance of the provisions of the constitution ; and under section 6, no corporation organized out of the State shall be allowed to transact business in this State on conditions more favorable than those prescribed by law for similar corporations organized under the laws of the State. Under section 9, no corporation is allowed to do business in this State without having one or more places of business therein, with an agent upon whom process may be served, nor without first filing a certified copy of its articles of incorporation with the Secretary of State. Section 10 provides that no corporation shall engage in any business other than that expressly authorized in its charter or articles of incorporation.

" Section 2293, Comp. Laws, Utah, 1888, as amended in 1896, and sections 351 and 352, Revised Statutes 1898, expressly embody these provisions of the constitution, and prohibit foreign corporations from doing business in this State, unless they have complied with these requirements of the law ; and any corporation failing to so comply with the provisions of the law is not entitled to the benefits of the law of this State relating to corporations.

" The appellant corporation did not comply with the laws of this State, and has no power to engage in its business of mining, or to acquire any water rights under the laws of this State. A corporation of Colorado coming into this State cannot bring

with it powers with which it is not endowed in Colorado. It can only have an existence under the express laws of the State where it is created, and can exercise no power which is not granted by its charter or some legislative act. The appellant corporation never filed with the Secretary of State of the State of Utah, a copy of its articles of incorporation, by either name under which it was incorporated, and never accepted the laws or constitution of Utah, nor has it appointed any agent or fixed any place of business within the State as required by law. The defendant corporation, therefore, is not entitled to the benefit of the laws of this State, with reference to corporations. *State* v. *So. Pac. Co.*, 28 So. Rep. 372 ; *Oregon Railway* v. *Oregonian Railway Co.*, 130 U. S. 1 ; *Barse Live Stock Co.* v. *Range Valley Cattle Co.*, 50 Pac. Rep. 630 (Utah).

" Under section 2339, Revised Statutes, even if priority of possession of the property in question was shown in the defendant corporation, still its right to locate and use the water or land is not recognized or acknowledged by the laws of this State, and it was not in a position to question the right of the plaintiff in the premises.

" 5. Appellant Nunn was a resident of Colorado, the general manager, and in charge of the business of the defendant corporation, both in Colorado and Utah. The chief engineer, hydraulic engineer, and officers of the defendant corporation, including the president and attorneys, consulted with and acted with him with respect to the acts performed with reference to the appropriation of water and in making the improvements discussed by them at Hanging Rock, but no plan for a dam at Hanging Rock was ever actually made, and no dam was constructed there. Throughout the whole procedure the board of the defendant corporation was the controlling authority for, and with whom Nunn acted. If Nunn had any right, it was with reference to the smaller power located below. The dam at Hanging Rock was to be a larger power, and was talked about in the project, but it was not constructed, and the ownership, if in any one, was in the defendant company, which was incapable of acquiring such ownership.

" While the testimony is very uncertain, it sufficiently ap-

pears that whatever was done by Nunn in the appropriation of water, was done for the use and benefit of the defendant company, and he cannot be treated as a personal claimant and owner of the easement and right of way in controversy as against the right of way as acquired by respondent."

From this excerpt it appears that the Supreme Court construed the statutes and constitution of Utah, deciding that the Power Company had no existence as a corporation in the State, and could acquire, therefore, no rights as such, and " was not in a position to question the right of the plaintiff (defendant in error) in the premises." And no independent right was found in Nunn. What was done by him the court said was done " for the use and benefit of the defendant company." And it was decided that he was not " a personal claimant and owner of the right of way in controversy as against the right of way acquired by respondent (plaintiff in error)." These conclusions did not involve the decision of Federal questions. The first expressed the meaning and effect of local statutes. The second depended upon a finding of fact. Neither, therefore, is reviewable by us.

The whole controversy was and is as to the right to occupy Provo Cañon, the defendant in error claiming that right for a railroad, the plaintiffs in error claiming that right for a reservoir site, and this latter right plaintiffs in error claimed and claim under section 2339 of the Revised Statutes of the United States. That section was and is their reliance. They say in their brief, that they " do not claim to hold the land in controversy " under the alleged contract with Ferguson.

" They claim to have obtained title to it under section 2339 of the Revised Statutes of the United States by entering upon it and appropriating it as a reservoir site, and this contract (the contract with Ferguson) only amounted to a waiver of Ferguson's rights as a squatter in favor of plaintiffs in error."

But their rights under that section depended upon questions of fact and questions of local law. The questions of fact were found against plaintiff in error, and the questions of local law we cannot review.

A Federal question is asserted because of the ruling of the

District Court refusing to remove the case to the United States Circuit Court upon the petition of plaintiffs in error. But upon the denial of the application to remove they filed the record in the Circuit Court of the United States, and that court remanded the cause, and a copy of its order was filed in the District Court before the commencement of the trial. In substantially similar circumstances we held in *Missouri Pacific Railway* v. *Fitzgerald,* 160 U. S. 556, that if error there had been in the ruling of the state court it became wholly immaterial.

*Writ of error dismissed.*