## MUSE *v.* ARLINGTON HOTEL COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

No. 59. Argued October 26, 27, 1897. — Decided December 6, 1897.

A case may be said to involve the construction or application of the Constitution of the United States when a title, right, privilege or immunity is claimed under that instrument; but a definite issue in respect to the possession of the right must be distinctly deducible from the record, before the judgment of the court below can be revised on the ground of error in the disposal of such a claim by its decision.

The same rule being applicable in respect of the validity or construction of a treaty, some right, title, privilege or immunity, dependent on the treaty, must be so set up or claimed as to require the Circuit Court to pass on the question of validity or construction in disposing of the right asserted.

In respect of the plaintiff's case as stated in their complaint, the Circuit Court decided no question as to the application or construction of the Constitution, or the validity or construction of the treaty, and this court is without jurisdiction to review the action of that court.

MOTION to dismiss or affirm.

Margaret A. Muse and others filed their original complaint in ejectment against the Arlington Hotel Company, July 25, 1894, in the Circuit Court of the United States for the Eastern District of Arkansas, to which defendant demurred. Pending the demurrer, plaintiffs filed an amended complaint, in which they averred that defendant was " a corporation organized

under the laws of the State of Arkansas and doing business at the city of Hot Springs in that State"; and that plaintiffs, except "Alice F. South, who is a citizen and resident of Coahuila, Mexico," were all citizens and residents of the United States, some of Louisiana, some of Texas, some of Mississippi, and one of Illinois.

That they are the only heirs at law of Don Juan Filhiol, who died intestate, a citizen of Louisiana, in 1821; and that they are the owners in fee simple of a league of land described in the complaint.

Plaintiffs alleged that Filhiol was born in France in 1740; that he left that country in 1763, going to San Domingo, and thence to Philadelphia in 1779, and finally arrived in New Orleans in May of that year, where he joined the volunteers in the war between Spain and England; that in 1783 he was appointed by the King of Spain captain of the army and commandant of the militia and assigned to duty at the post of Ouachita in Louisiana, under instructions from Don Estevan Miro, the governor general of that province.

That, on December 12, 1787, Filhiol memorialized the governor of Louisiana and West Florida for a grant of land, whereon the governor ordered a survey of the land applied for, and that before February 22, 1788, Don Carlos Trudeau, the then surveyor general of Louisiana, made a survey in accordance with the law as it then existed, and made a report thereof, with figurative plan, and procès verbal in due form, in and by which the land was described; that the survey, figurative plan and procès verbal have been lost or destroyed, and plaintiffs could not produce them, but they alleged that on February 22, 1788, Miro, as governor, made and delivered to Filhiol a grant for a certain league of land, the description of which was set forth in the complaint; that the grant was made while Filhiol was acting as commandant of the post of Ouachita, as a reward for his civil and military services in his position as commandant; and that Miro, as governor, was by the Spanish colonial laws vested with power to make grants of land and to convey by such grants the absolute fee simple to the lands granted.

Plaintiffs further averred that the land granted by Miro to Filhiol consisted of a certain one square league with the hot springs at the city of Hot Springs as its centre, the description, metes and bounds of which league were more accurately described in the survey, figurative plan and procès verbal; and, setting forth a translation of the grant, plaintiffs stated that after the delivery of the grant to Filhiol, December 6, 1788, Trudeau, who was then public and private surveyor of Louisiana, made and delivered to Filhiol a certificate of measurement of the land, a translation of which was also given; that the making and delivery of this certificate was a delivery of the judicial possession of the land, and had the force and effect of segregating it from the public domain, and that the grant vested full and complete title in the grantee.

It was further alleged that Filhiol sold and conveyed the land, November 25, 1803, to his son in law, Bourgeat, passing the deed before the military and civil commandant of Ouachita, the deed being witnessed by two witnesses, who signed the act in the presence of two others, and a copy of which was set out; that the deed was immediately reported to the proper office of Louisiana and was afterwards duly recorded; that Bourgeat retroceded the same lands to Filhiol by deed passed before the judge of the parish of Pointe Coupee, July 17, 1806; that this deed (a copy of which was given) was duly filed and recorded; and that Filhiol never thereafter parted. with his title to the land. And plaintiffs alleged that when these deeds were made, the Spanish colonial law forbade any public officer having authority to receive acknowledgments and pass deeds for the conveyance of lands, to pass such deeds or receive acknowledgments thereof, unless they knew that the vendor had title to the lands proposed to be sold.

Plaintiffs also averred that in 1819, Filhiol leased the Hot Springs to one Dr. Wilson for five years; that shortly thereafter, in 1821, Filhiol died; and that ever since his death, plaintiffs had always urged their title to the property, and employed agents and attorneys to do so for them, and that during a large part of this time they had been embarrassed by the want of the original grant, which had been mislaid;

that often and repeated searches were made by plaintiffs for it but without success, but that lately, in 1883, the grant had been found.

The complaint continued: "Said plaintiffs state that they claim title to said league of land so granted by said Estevan Miro, as governor of said province, to the said Juan Filhiol, as the heirs at law of said Juan Filhiol, and they state that they will rely upon the following written evidences of their title for the maintenance of this action:

"First. On the grant made by Don Estevan Miro, as governor of the province of Louisiana, on February 22d, 1788, to Don Juan Filhiol, a translation of which grant is filed herewith, marked 'Exhibit A,' and made part hereof.

"Second. On the certificate of measurement or survey made by Carlos Trudeau, surveyor of the province of Louisiana, on December 6, 1788, and delivered by him on that date to Don Juan Filhiol, a translation of which, marked 'Exhibit B,' is filed herewith and made part hereof.

"Third. On the deed of said land made by Don Juan Filhiol to Narcisso Bourgeat on November 25, 1803, a translation of which is herewith filed, marked 'Exhibit C,' and made part hereof.

"Fourth. On the deed or retrocession of said land made by Narcisso Bourgeat to Don Juan Filhiol on the 17th of July, 1806, a translation of which deed of retrocession is herewith filed, marked 'Exhibit D,' and made part hereof.

"Fifth. On the 3d article of the treaty between the United States of America and the French Republic of April 30, 1803, which was ratified on the 21st of October, 1803.

"Sixth. On the Fifth Amendment to the Constitution of the United States."

And plaintiffs then alleged that defendant was in the unlawful possession of part of the land, "which portion is included in the Hot Springs Mountain reservation, in the city of Hot Springs, county of Garland, State of Arkansas, the boundary lines of which reservation were established by the Hot Springs Commission. by public surveys in pursuance of the laws of the United States;" and this was followed by a

particular description of the land so alleged to be unlawfully possessed.

Plaintiffs charged that defendant had been in such unlawful possession since the third day of March, 1892, during all of which time plaintiffs had title to and the right of possession of said land; and alleged that by reason of such wrongful possession they had been damaged in the sum of twenty thousand dollars; and prayed judgment for possession and damages. To this amended complaint defendant demurred, and also filed an answer and exceptions.

The Circuit Court sustained the demurrer and exceptions, and entered judgment dismissing the complaint with costs, whereupon this writ of error was sued out directly to that court.

The Circuit Court, Williams, J., held, 68 Fed. Rep. 637, that the alleged granting papers were ineffectual to perfect title, because there was no showing that the acts required by law to be performed, to wit, the making of an actual survey on the ground; the certification and approval of the same; and the delivery of possession, had ever been performed; that the claim was barred under the act of Congress of May 26, 1824, c. 173, 4 Stat. 52, entitled an act " enabling the claimants to lands within the limits of the State of Missouri and Territory of Arkansas to institute proceedings to try the validity of their claims," and by the act of Congress known as the Hot Springs Act of June 11, 1870, c. 126, 16 Stat. 149; that the claim, if originally valid, must be considered as having been abandoned; and that plaintiffs were estopped from claiming title to the land under the facts disclosed.

*Mr. John G. Carlisle* for plaintiffs in error. *Mr. Logan Carlisle* was on his brief.

*Mr. G. B. Rose* for defendant in error. *Mr. U. M. Rose* was on his brief.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

Writs of error may be sued out directly from this court to the Circuit Courts in cases, among others, in which the construction or application of the Constitution of the United States is involved; or in which the validity or construction of any treaty made under the authority of the United States is drawn in question. Act of March 3, 1891, c. 517, § 5, 26 Stat. 826. If this case does not fall within one or both of these classes, this writ of error cannot be maintained.

As ruled in *Ansbro* v. *United States*, 159 U. S. 695, 697, "a case may be said to involve the construction or application of the Constitution of the United States when a title, right, privilege or immunity is claimed under that instrument, but a definite issue in respect to the possession of the right must be distinctly deducible from the record before the judgment of the court below can be revised on the ground of error in the disposal of such a claim by its decision." *Green* v. *Cornell*, 163 U. S. 75, 78.

The same rule is applicable in respect of the validity or construction of a treaty. Some right, title, privilege or immunity dependent on the treaty must be so set up or claimed as to require the Circuit Court to pass on the question of validity or construction in disposing of the right asserted. *Borgmeyer* v. *Idler*, 159 U. S. 408.

The general doctrine has been frequently announced in cases involving the jurisdiction of this court under the twenty-fifth section of the Judiciary Act of September 24, 1789; section 709 of the Revised Statutes; and acts relating to the revision of judgments of the Supreme Court and Court of Appeals of the District of Columbia and the Supreme Courts of the Territories, as well as in cases involving the jurisdiction of the Circuit Courts. *Baltimore & Potomac Railroad* v. *Hopkins*, 130 U. S. 210, and cases cited; *United States* v. *Lynch*, 137 U. S. 280; *South Carolina* v. *Seymour*, 153 U. S. 353; *New Orleans* v. *Benjamin*, 153 U. S. 411; *Linford* v. *Ellison*, 155 U. S. 503; *Durham* v. *Seymour*, 161 U. S. 235; *Hanford* v. *Davies*, 163 U. S. 273; *Oxley Stave Company* v. *Butler County*, 166 U. S. 648.

The amended complaint stated that plaintiffs would "rely

upon the following written evidences of their title for the maintenance of this action," and enumerated, among them, "the 3d article of the treaty between the United States of America and the French Republic of April 30, 1803, which was ratified on the 21st of October, 1803," 8 Stat. 200; and "the Fifth Amendment to the Constitution of the United States;" but nowhere was any right, title, privilege or immunity asserted to be derived from either Constitution or treaty. There was nothing to indicate in what way, if any, the cause of action was claimed to arise from either.

The Fifth Amendment prohibits the deprivation of property without due process of law, and the taking of private property for public use without compensation. The treaty of cession, Public Treaties, 332, provided for the protection of the inhabitants of the territory ceded in the enjoyment of their property. But neither amendment nor treaty gave what was not already possessed.

The jurisdiction of the Circuit Court was invoked on the ground of diverse citizenship and not on the ground that the case arose "under the Constitution or laws of the United States, or treaties made, or which shall be made under their authority." Act of August 13, 1888, c. 866, § 1; 25 Stat. 433. And it is settled that in order to give the Circuit Court jurisdiction of a case as so arising, that it does so arise must appear from the plaintiff's own statement of his claim. *Colorado Central Mining Co.* v. *Turck*, 150 U. S. 138; *Press Publishing Co.* v. *Monroe*, 164 U. S. 105.

If this case had been taken to the Circuit Court of Appeals, the decision of that court would have been final under the sixth section of the statute, and it might well be concluded that therefore the writ of error would not lie under the fifth section.

In respect of plaintiffs' case as stated in their complaint, the Circuit Court decided no question as to the application or construction of the Constitution or the validity or construction of the treaty.

The ground, among other grounds, in defeat of plaintiffs' action, that the claim was barred by the act of June 11, 1870,

was indeed sustained, but that was as matter of construction, and the constitutionality of the act if held to apply to the claim, rather than to the amenability of the United States to suit, was not considered; nor does it appear that the judgment of the Circuit Court was invoked upon it. In this court it was contended for plaintiffs in error that the act was an enabling act authorizing suits to be brought against the United States, which otherwise could not have been maintained; that the limitation operated on the jurisdiction and not on the right; and that to bar title if suit were not brought within ninety days was so unreasonable that the intention to do so could not be imputed to Congress. These forcible suggestions would undoubtedly have been accorded due weight by the Circuit Court of Appeals, but we are unable to deal with them on this writ.

The Circuit Court also held that plaintiffs' title failed because of non-compliance with the Spanish law. It was not pretended that the treaty, the validity of which was confessedly not in dispute, could be so construed as to compel judicial recognition of unconsummated claims, and it was for the Circuit Court to determine into what category the alleged grant fell. In doing so, the construction of the treaty was not drawn in question in any manner.

*Writ of error dismissed.*

MR. JUSTICE HARLAN and MR. JUSTICE WHITE dissented.