## UNITED STATES v. KRALL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH
CIRCUIT.

No. 216.   Argued and submitted April 8, 1899. — Decided May 15, 1899.

On its face the decree of the Circuit Court of Appeals in this case is not a
final judgment, and the appeal must therefore be dismissed.

THE case is stated in the opinion.

*Mr. Charles W. Russell* for appellants.   *Mr. Solicitor General* was on his brief.

*Mr. Edgar Wilson* for appellee.

MR. JUSTICE WHITE delivered the opinion of the court.

The United States alleged in its bill substantially as follows:

That in July, 1864, in Boise County, Territory of Idaho, (now Ada County, State of Idaho,) a tract of land was duly set aside as a military reservation for the establishment of a military post, and that the reservation was subsequently occupied as such post and so continued to be used by the Government of the United States, for the purpose in question, up to the time when the bill was filed.   It was alleged, moreover, that flowing across the reservation was a stream of water known as Cottonwood Creek, which was non-navigable, but which afforded "an ample supply for the agricultural, domestic and practical purposes of the officers and troops of said military post, and no more, and that said stream of water, together with all the uses and privileges aforesaid, belong to and are the property of plaintiffs; and that from the time of the occupancy and location of said post, to wit, the month of July, A.D. 1864, the waters of said stream have been continually used and appropriated, and now are used and appropriated, for all

agricultural, domestic and practical purposes by plaintiff, through its said officers and troops."

The bill then averred that at a point on said stream above the reservation the defendant, his agents and employés, "are now, and have been since June, 1894, actually engaged in wrongfully and unlawfully diverting the waters of said Cottonwood Creek, and the whole thereof, from their natural course over and across the premises hereinbefore described. And the said defendant, his agents and employés have, since said June, 1894, been and now are actually engaged in diverting and appropriating the waters of said stream, and the whole thereof, and preventing and obstructing the same from flowing in its natural channel across the said military reservation, and thereby rendering the said premises unfit for use and occupancy as a military post."

Averring the illegality of defendant's acts in diverting the water from the stream and that all the water flowing in its natural course was essential for the purpose of the reservation, the bill asserted the title of the United States to all the water in the stream, and prayed that the defendant be enjoined from appropriating any portion thereof for his use "as aforesaid." In his answer the defendant denied that the water drawn off by him deprived the reservation of water necessary for any of its purposes, and on the contrary charged that there was sufficient water in the stream to meet the demands not only of the water right, which he asserted was vested in him, but also to supply every demand for water, which the reservation might need. He alleged that pursuant to the laws of the Territory of Idaho, in 1877 he had located a perpetual water right for five hundred cubic inches of water, at a point on the stream above the place where it flowed through the reservation, and that this location of water right was sanctioned by the laws of the United States. It was besides averred that during the years 1894 and 1895 "one Peter Sonna, and his associates, whose names are unknown to this defendant, without defendant's consent, diverted a large amount of the waters of said stream from the head waters thereof, and above the point on said stream where plaintiff alleges this defendant has obstructed and diverted the

same, and led the same through pipes to a reservoir on said military post, and that said military post, the officers and troops thereon stationed, have used the waters so stored in part, and have permitted large quantities thereof to pass across said reservation and to be used by the said Peter Sonna for mechanical and other purposes."

A stipulation was entered into between the parties containing an agreed statement of facts, which showed substantially this: That the reservation in question was established prior to the initiation by the defendant of his alleged water right; that "in 1877 the defendant located for agricultural, irrigation and other and domestic and useful purposes, 500 inches of the waters flowing in Cottonwood Creek, and diverted them upon the lands adjacent and in the vicinity of the easterly and southeasterly side of the military reservation, and has continuously used, and is now using, such waters, or portions thereof, for agricultural and irrigating purposes ever since that time upon such lands. His lands consist of a homestead of 160 acres, a desert entry of 160 acres, and his wife's desert of about 70 acres; he has expended between $8000 and $10,000 in the construction of necessary ditches, flumes, reservoirs, laterals and other improvements necessary for the reclamation of such lands, which were all desert in character, and of a class known as 'arid lands,' incapable of producing crops of fruit without the application of water. By means of the use of this water and the rights claimed under such location, he and his grantee have acquired title to said desert lands, and have been enabled to cultivate large annual crops of farm produce annually, and to propagate large orchards, which without the water they could not have done."

The statement, moreover, indicated the mode in which the reservation drew its supply of water from the stream, some of it being taken above the point where the defendant's water right was located, and contained the following:

"On or about the year 1894 one Peter Sonna and his associates, without the consent of the defendant, went upon the head waters of said 'Five-Mile Gulch,' one of the main tributaries of Cottonwood Gulch, and at sundry points gathered and

appropriated the waters of large and flowing springs there situated, and which are supply springs of said 'Five-Mile Gulch,' and the stream there situated, and about four miles above the point of the defendant's diversion, and conveyed the waters of said springs by means of pipes and mains, the latter being commonly known as '2-inch pipe,' down the mountains to the reservoir before mentioned as located above the officers' quarters on the reservation. The reservoir has a capacity of about 570,000 gallons. The waters so gathered and conducted were and now are stored in said reservoir, and distributed therefrom from time to time as hereafter shown. A portion of the waters from the springs, if not diverted, would eventually flow into Cottonwood Creek above defendant's point of diversion.

"The waters stored in the Sonna reservoir aforesaid are used for fire purposes only on the reservation, and are also conveyed through mains about three-quarters of a mile into Boise City, where they are used in the running of a passenger elevator in one of the largest office buildings of the city, for drinking and closet purposes therein, and for domestic [uses] in several city residences, and, in case of danger, for fire purposes, through hydrants located along the line of said main."

The lower court concluded that as the stream was not navigable and was wholly on the public domain, the defendant had no right to appropriate any of the waters as against the United States, and therefore enjoined the taking by him of any water, from the stream, above the reservation except to the extent that license to do so might be given by the commandant of the post.

The Circuit Court of Appeals, to which the cause was taken, referring to *Atchison* v. *Peterson*, 20 Wall. 507, 512; *Basey* v. *Gallagher*, 20 Wall. 682; *Broder* v. *Water Company*, 101 U. S. 274; and *Sturr* v. *Beck*, 133 U. S. 541, concluded that the defendant had acquired a valid water right even as against the United States, and therefore reversed the judgment of the trial court, and remanded the cause to that court for further proceedings in accordance with the views expressed in its opinion. The opinion of the court, after stating the right of

the defendant to acquire a water privilege, on public lands of the United States, even as against the United States, declared as follows:

"His [the defendant's] appropriation was, of course, subject to the prior appropriation and use of the waters of the stream made by the government officials for the purpose of the military post reservation, which consisted of 640 acres of land, and was located on the stream in question below the point of the appellant's diversion."

It is charged in the assignment of errors that the decision of the Court of Appeals was erroneous, first, because it recognized the right of the defendant to acquire a water right as against the United States; and, second, because it held that the water right of the defendant, which originated after the establishment of the reservation, could deprive the reservation of water necessary for its purposes. This is asserted to be the consequence of the decree, because it is argued it may be construed as depriving the Government of the right to use but the quantity of water which had been previously actually appropriated for the use of the reservation, thus preventing it from enjoying the water essential for the purposes of the post, and rendered necessary by its expansion and development. To the first question the argument at bar was principally addressed.

Before considering the assignments, however, we are met on the threshold of the case with the question whether the record is properly here, because of the want of finality of the judgment rendered by the Circuit Court of Appeals. On its face the decree of that court is obviously not a final judgment, since it did not dispose definitively of the issues presented, but simply determined one of the legal questions arising on the record, and remanded the case to the lower court for further proceedings. When the state of the record, upon which the Court of Appeals passed, is considered in the light of the pleadings and agreed statement of facts, it becomes obvious that the decree, by that court rendered, was not only not in form, but also was not in substance a final disposition of the controversy. The cause of action alleged in the complaint was the

diversion of water by the defendant from the stream, to the detriment of the requirements of the reservation, by a water right acquired by the defendant after the establishment of the reservation. The agreed statement of facts, although it made it unquestioned that the defendant's asserted water right had been located on the stream above the reservation, after its establishment, also made it equally clear that after such location, above the point where the defendant's water right was fixed, water had been drawn off and carried to the reservation, and there retained in a reservoir and supplied, in part at least, to Boise City for purposes wholly foreign to the military post. There was nothing whatever in the agreed statement of facts by which it could be determined whether the amount of water thus drawn and carried to the post and used for purposes foreign to its wants would, if used for the purposes of the post alone, not have been entirely adequate to supply every present or potential need. Conceding on the general question of law that the defendant could acquire a water right, as against the United States, subject to the paramount and previous appropriation of the reservation, the court manifestly, from the state of the record, was not in a position to adjudge the rights of the parties without further proof as to exactly what would be the situation if water had not, subsequent to the establishment of the water right of the defendant, been taken from the sources of supply above his location and carried to the reservation and there distributed for other than reservation purposes. This condition of things rendered it therefore essential to remand the cause in order that the exact situation might be ascertained before the rights of the parties were finally passed upon. The fact that the decree appealed from was not final is moreover conclusively demonstrated by considering that if on the present appeal we should conclude that the judgment of the Court of Appeals was correct, we would be unable to dispose of the controversy, and we would be obliged, as did the Court of Appeals, to remand the case to the trial court for further proceedings. The gravamen of the complaint was that the alleged water right of the defendant had deprived the reservation of water required for its purposes.

Certainly if on a further trial the proof should establish that the deficiency of supply at the reservation arose not from the drawing off by the defendant of water covered by his water right, but from the act of those who, subsequent to the location of the defendant's asserted water right, tapped the sources of the supply of the stream and carried the water to the reservation whence it was distributed to Boise City, a very different condition of fact from that stated in the complaint would be presented. It follows, from these conclusions, that the judgment below was not final, and the appeal taken therefrom must be, and is,

*Dismissed for want of jurisdiction.*