## *SHELLENBARGER v. FEWEL.

No. 1681.    Opinion Filed March 19, 1912.

Rehearing Denied June 4, 1912.

(124 Pac. 617.)

1. **REMOVAL OF CAUSES—Cases Under Laws of United States—Allegations in Pleadings.**    When a cause is sought to be removed from a state to a federal court, on the sole ground that it is one arising under the Constitution, laws, or treaties of the United States, the fact that it does so arise, thus making it removable, must be ascertained from the necessary allegations of plaintiff's statement of his own cause of action.   And in determining the question, resort may not be made to the allegations in the petition for removal or in later pleadings.

2. **SAME—Nature of Controversy.**    A cause cannot be removed from a state to a federal court simply because, in the progress of the litigation, it may become necessary to give a construction to the Constitution or laws of the United States.   In such cases the state courts are competent to determine the matter in the first instance.

3. **EJECTMENT—Proceedings—Pleading Title.**    Under section 6122, Comp. Laws 1909, the plaintiff, in an action for the recovery of real estate, is not required to deraign his title with particularity.

4. **INDIANS—Lands—Inheritance.**    The law of descent, in force at the date the selection of a Creek allotment takes effect, governs as to the classification of the heirs; and this law relates back to the death of the Indian entitled to take the allotment, and identifies such heirs as of that date.

5. **SAME.**    Under the Creek law of descent and distribution, put in force by the Original Creek Agreement, c. 676, 31 St. at L. 870, an intermarried noncitizen husband receives out of his deceased citizen wife's allotment an heir's part.    Following de Graffenreid v. Iowa L. & T. Co., 20 Okla. 711, 95 Pac. 624.

(Syllabus by Brewer, C.)

*Error from District Court, Tulsa County;*
*John H. Pitchford, Judge.*

Action by William M. Fewel against John H. Shellenbarger. Judgment for plaintiff, and defendant brings error.   Affirmed.

*William R. Lawrence,* for plaintiff in error.

*B. T. Hainer* and *H. B. Martin,* for defendant in error.

*Appealed to the Supreme Court of the United States.

Opinion by BREWER, C. Suit for possession of lands, cancellation of deeds, and to quiet title. This action was filed July 13, 1908, in the district court of Tulsa county. The cause was submitted to and tried· by the court, by agreement of the parties, on an agreed statement of facts, summarized as follows: That Minnie Solander was a duly enrolled citizen by blood of the Creek Nation, and entitled to an allotment at the date of her death, intestate, October 8, 1899; that she left surviving, her husband, George Solander, and one child, Hettie Solander, and a sister Phoebe Trusler; that Hettie was the legitimate child of Minnie and George Solander; that the husband, George Solander, was not of Creek blood; that the child Hettie was of one-quarter Creek blood; that Hettie died December 19, 1899, intestate, and without issue, and was the only child of Minnie; that Phoebe Trusler was of Creek blood, and the only sister of Minnie; and Minnie had no brother, nor were there children of deceased brothers or sisters; that George Solander and Phoebe Trusler selected and had allotted to the heirs of Minnie Solander the S. ½ of the S. E. ¼, section 2, township 17 N., range 13 E., Tulsa county, Okla.; that thereafter patent was issued in the name of the heirs of Minnie Solander, deceased. It is further admitted in the agreed statement of facts as follows:

"That the Creek Nation as a political sovereignty had a written and codified form of laws, and that the following is a correct copy of the Creek laws of descent and distribution in force and effect at the time of the deaths of the said Minnie Solander and the said Hettie L. Solander, applicable to the descent and distribution of the estate of the said Minnie Solander and the estate of the said Hettie L. Solander, deceased, as contained in the Creek statutes, to wit. * * *"

The laws of the Creek Nation are set out; among the sections being as follows:

"Sec. 6. Be it further enacted that if any person die without a will, having property and children, the property shall be equally divided among the children by disinterested persons and in all cases where there are no children, the nearest relation shall inherit the property."

·"Sec. 8. The lawful or acknowledged wife of a deceased husband shall be entitled to one-half of the estate, if there are

no heirs, and an heir's part if' there should be other heirs in all cases where there is no will. The husband surviving shall inherit of a deceased wife in a like manner."

At page 37 of plaintiff in error's brief the issue is stated thus:

"The sole inquiry is: Who were the heirs of Minnie and Hettie Solander under the Creek law of descent? Section 8, *supra.*"

William M. Fewel was plaintiff below, and John H. Shellenbarger was defendant; they will be referred to herein as they were known in the trial court.

The plaintiff claimed title under a deed from George Solander, as sole heir of Minnie and Hettie Solander, his deceased wife and child, dated April 27, 1906. The defendant claimed title under a deed from Phœbe Trusler as sole heir, dated August 15, 1906. The execution of the deeds by the respective parties was admitted. The court found that George Solander took the property as heir, and, having conveyed it to plaintiff, gave plaintiff judgment.

There are but two questions to be determined in this case: First. Whether this cause was removable to the United States court on application of defendant. Second. To determine who, under the laws of descent and distribution of the Creek Nation, took this allotment as heir.

We will consider first the question of removability. The jurisdiction of the Circuit Courts of the United States is defined in the Act of March 3, 1887, c. 373, 24 St. at L. 552, as corrected by the Amendatory Act of August 13, 1888 (chapter 866, vol. 1, Sup. Rev. St. U. S. p. 611 [U. S. Comp. St. 1901, p. 508]), and so far as necessary to be examined here is as follows:

"Section 1. That the Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, and arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, etc. * * *"

The authority for removing a suit upon the ground that it arises "under the Constitution or laws of the United States, etc.," is found in the same act, *supra,* as follows:

"Sec. 2. That any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, of which the Circuit Courts of the United States are given original jurisdiction by the preceding section, which may now be pending, or which may hereafter be brought in any state court, may be removed by the defendant or defendants therein to the Circuit Court of the United States for the proper district."

Before proceeding to a discussion of the matter, it is proper to observe that the single question here is whether the cause is a removable one, because "arising under the Constitution or laws, or treaties, etc., of the United States." No other questions, such as diversity of citizenship, and others mentioned in the statutes, are involved. Therefore logically, and indeed necessarily, the first inquiry is: What is a controversy "arising under the Constitution or laws of the United States," and how defined? In the text Encyclopedia of U. S. Supreme Court Reports, 670, such controversies are defined as follows:

"Where it has in some way been made to appear on the face of the record that some title, right, privilege, or immunity, on which the recovery depends, will be defeated by one construction of the Constitution or a law of the United States or sustained by an opposite construction in the state court, the case may be removed, regardless of the citizenship of the parties."

The above definition may have been deduced from the case of *Carson v. Dunham,* 121 U. S. 421, 7 Sup. Ct. 1030, 30 L. Ed. 992, wherein it is said:

"The suit must be one in which some title, right, privilege, or immunity on which the recovery depends will be defeated by one construction of the Constitution, or a law or treaty of the United States, or sustained by a contrary construction."

—Cited with approval in *Tennessee v. Union & P. Bank,* 152 U. S. at page 460, 14 Sup. Ct. at page 656 (38 L. Ed. 511).

And in *Starin v. New York,* 115 U. S. 248, 257, 6 Sup. Ct. 28, 31 (29 L. Ed. 388), it was stated, as the effect of all the authorities on the subject, that if, from the question involved in the suit, "It appears that some title, right, privilege, or immunity,

on which the recovery depends, will be defeated by one construction of the Constitution or a law of the United States, or sustained by the opposite construction, the case will be one arising under the Constitution or laws of the United States, within the meaning of that term as used in the act of 1875; otherwise not." Cited with approval in *S. P. R. Co. v. California,* 118 U. S. 109, 6 Sup. Ct. 993, 30 L. Ed. 103.

In the judiciary act of 1887, as corrected by the act of August 13, 1888, *supra,* the language giving jurisdiction in this class of cases is identical with that of the act of 1875 except as to the amount involved in the controversy. The following cases involve different phases of the clause of the judiciary act under consideration: *Cohens v. Virginia,* 6 Wheat. 264, 379, 5 L. Ed. 257; *Osborn v. United States Bank,* 9 Wheat. 738, 824, 6 L. Ed. 240; *The Mayor v. Cooper,* 6 Wall. 247, 252, 18 L. Ed. 851; *Gold Washing, etc., Co. v. Keyes,* 96 U. S. 199, 201, 24 L. Ed. 656; *Tennessee v. Davis,* 100 U. S. 257, 264, 25 L. Ed. 648; *Railroad Co. v. Mississippi,* 102 U. S. 135, 26. L. Ed. 96; *Babbitt v. Clark,* 103 U. S. 606, 612, 26 L. Ed. 507; *Bush v. Kentucky,* 107 U. S. 110, 115, 1 Sup. Ct. 625, 27 L. Ed. 354; *Ames v. Kansas,* 111 U. S. 449, 462, 4 Sup. Ct. 437, 28 L. Ed. 482; *Kansas Pac. R. Co. v. Atchison, etc., R. Co.,* 112 U. S. 414, 416, 5 Sup. Ct. 208, 28 L. Ed. 794; *Brown v. Houston,* 114 U. S. 622, 5 Sup. Ct. 1091, 29 L. Ed. 257; *Provident Sav., etc., Society v. Ford,* 114 U. S. 635, 642, 5 Sup. Ct. 1104, 29 L. Ed. 261; *Pacific Railroad Removal Cases,* 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319; *Tennessee v. Whitworth,* 117 U. S. 139, 6 Sup. Ct. 649, 29 L. Ed. 833; *Germania Ins. Co. v. Wisconsin,* 119 U. S. 473, 475, 7 Sup. Ct. 260, 30 L. Ed. 461; *Gibbs v. Crandall,* 120 U. S. 105, 106, 7 Sup. Ct. 497, 30 L. Ed. 590; *Leather, etc., Bank v. Cooper,* 120 U. S. 778, 780, 7 Sup. Ct. 777, 30 L. Ed. 816.; *Bock v. Perkins,* 139 U. S. 628, 11 Sup. Ct. 677, 35 L. Ed. 314; *Virginia v. Paul,* 148 U. S. 107, 120, 13 Sup. Ct. 536, 37 L. Ed. 386.

The next step in the investigation here involves the question of how the removability of a cause shall be determined, when

sought on this ground. It appears to be the well-settled law that, to warrant the removal of a cause on the sole ground that it is one "arising under the Constitution or laws of the United States," the fact that it does so arise, thus affording grounds for removal, must appear in the plaintiff's statement of his own claim, alleged in the state court, and that, if it does not so appear, the want cannot be supplied by any statement in the petition for removal, or in later pleadings.

In *Tennessee v. Union & P. Bank,* 142 U. S. at page 460, 14 Sup. Ct. at page 656 (38 L. Ed. 511), it is said:

"The question whether a party claims a right under the Constitution or laws of the United States is to be ascertained by the legal construction of its own allegations, and not by the effect attributed to these allegations by the adverse party."

The court in that case quoted the above language with approval from *Central R. C. of N. Y. v. Mills,* 113 U. S. 249, 257, 5 Sup. Ct. 456, 459 (28 L. Ed. 949), and in *Filhoil v. Maurice,* 185 U. S. 108, 22 Sup. Ct. 560, 46 L. Ed. 827, it is said:

"It is settled that, in order to give the Circuit Court (U. S.) jurisdiction of a case as so arising, it does so arise must appear from the plaintiff's own statement of his claim."

See, also, the more recent case of *Joy v. St. Louis,* 201 U. S. 332, 26 Sup. Ct. 478, 50 L. Ed. 776, wherein it is said:

"It is a long-settled rule, evidenced by many decisions of this court, that the plaintiff cannot make out a case as arising under the Constitution or laws of the United States unless it necessarily appears by the complaint or petition or bill in stating plaintiff's cause of action."—Citing *Gold Washing, etc., Co. v. Keyes,* 96 U. S. 199, 24 L. Ed. 656.

In *H. & T. C. R. Co. v. Texas,* 177 U. S. 66, 20 Sup. Ct. 545, 44 L. Ed. 673, it is said in the syllabus:

"The federal character of a suit must appear in the plaintiff's own statement of his claim, and where a defense has been interposed, the reply to which brings out matters of a federal nature, those matters thus brought out by the plaintiff do not form a part of his cause of action."

And it is held that in that case a motion to remove to the federal court was properly denied; but, when heard in the Supreme Court on writ of error to the Court of Appeals of Texas,

the court took jurisdiction and reversed the cause on the federal question involved.

To illustrate the principle now under discussion, *i. e.*, that the right of removal must be determined alone from the plaintiff's statement of his claim, we quote from the last-cited case (*H. & T. C. R. Co. v. Texas,* 177 U. S. 66, 20 Sup. Ct. 545, 44 L. Ed. 673):

"The suit, as it appears upon the face of the petition of plaintiff, was upon the bonds given by the company for the loan of a portion of the school fund, and to foreclose the lien of the state upon the property of the company, and in the petition reference was made to the act of 1870 for the purpose of stating the amount due on the bonds for principal and interest. Nothing upon the face of this petition showed any fact upon which federal jurisdiction could be based. The company answered by alleging certain payments in treasury warrants, which, if properly credited, would show that with the other payments that had been made there was nothing due the plaintiff on the bonds. As an answer to this defense, the plaintiff set up the invalidity of the laws providing for payments in treasury warrants; that the warrants were issued by the state in violation of both the state and federal Constitutions; and that the payments were therefore illegal and void. This was no part of the plaintiff's cause of action upon which suit was brought, and that cause of action did not in any way involve a question arising under the Constitution or laws of the United States. The defendant therefore made out no case for a removal to the United States Circuit Court; citing *Oregon & C. Ry. Co. v. Skottowe,* 162 U. S. 490, 494 [16 Sup. Ct. 869, 40 L. Ed. 1048]; *Tennessee v. Union & P. Bank,* 152 U. S. 454 [14 Sup. Ct. 654, 38 L. Ed. 511]; *Galveston, Harrisburg, etc., Ry. v. Texas,* 170 U. S. 226, 235 [18 Sup. Ct. 603, 42 L. Ed. 1017]."

As has been seen in the foregoing authorities, to show the removability of a cause under this clause of the statute, it must not only appear that the controversy arises under the Constitution or laws of the United States, but such must appear in the necessary statements by plaintiff, in the state court, of his cause of action. And that matter set up by plaintiff in reply to an answer, although showing a federal question, will not create a cause for removal. And even in construing plaintiff's statement of his cause of action, statements he may make therein which

are unnecessary are not to be considered as showing jurisdiction in the federal court, or a ground for removal. Nor can the plaintiff show jurisdiction in the federal court, or ground for removal thereto, by averments in his petition as to what defense will be interposed, or that it will involve a federal question. The above is fully sustained in *Joy v. St. Louis,* 201 U. S. 332, 26 Sup. Ct. 478, 50 L. Ed. 776, wherein it is said:

"This original jurisdiction, it has been frequently held, must appear by the plaintiff's statement of his own claim, and it cannot be made to appear by the assertion in the plaintiff's pleading that the defense raises or will raise a federal question. As has been stated, the rule is a reasonable and just one that the complainant in the first instance shall be confined to a statement of his cause of action, leaving to the defendant to set up in his answer what his defense is, and if anything more than a denial of plaintiff's cause of action, imposing upon the defendant the burden of proving such defense. This principle was given effect to in *Tennessee v. Union & P. Bank,* 152 U. S. 454 [14 Sup. Ct. 654, 38 L. Ed. 511]; *Muse v. Arlington Hotel Co.,* 168 U. S. 430 [18 Sup. Ct. 109, 42 L. Ed. 531]; *Third Street, etc., Co. v. Lewis,* 173 U. S. 457 [19 Sup. Ct. 451, 43 L. Ed. 766]; *Arkansas v. Coal Co.,* 183 U. S. 185 [22 Sup. Ct. 47, 46 L. Ed. 144]; *Filhoil v. Maurice,* 185 U. S. 108 [22 Sup. Ct. 560, 46 L. Ed. 827]; *Boston, etc., Co. v. Montana, etc., Co.,* 188 U. S. 632 [23 Sup. Ct. 434, 4 L. Ed. 626]."

And it may be well to bear in mind that, as was said in *Cook County v. Calumet & C. C. Co.,* 138 U. S. 635, 653, 11 Sup. Ct. 435, 440 (34 L. Ed. 1110) :·

"The validity of a statute is not drawn into question every time rights claimed under such statute are controverted, nor is the validity of an authority every time an act done by such authority is disputed."

See, also, *Doe v. City of Mobile,* 9 How. 451, 13 L. Ed. 212; *Telluride P. T. Co. v. Rio Grande W. Ry. Co.,* 175 U. S. 639, 647, 20 Sup. Ct. 245, 248 (44 L. Ed. 305); *Little York G. W. & W. Co. v. Keyes,* 96 U. S. 199, 203 (24 L. Ed. 656); and also *Tennessee v. Union & P. Bank,* 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511, wherein it is said:

"A cause cannot be removed from a state court simply because, in the progress of the litigation, it may become necessary

to give a construction to the Constitution or laws of the United States."

See, also, *Carson v. Dunham,* 121 U. S. 421, 7 Sup. Ct. 1030, 30 L. Ed. 992; *Chicago R. Co. v. Martin,* 178 U. S. 245, 20 Sup. Ct. 874, 44 L. Ed. 1055; *Defiance Water Co. v. Defiance,* 191 U. S. 184, 24 Sup. Ct. 63, 48 L. Ed. 140.

And to illustrate, we quote from certain cases, wherein it was held no federal question was presented, as follows:

In the case of *Filhoil v. Maurice,* decided by the United States Supreme Court in 185 U. S. 108, 22· Sup. Ct. 560, 46 L. Ed. 827, the action was one of ejectment, pleaded by plaintiff originally in the Circuit Court of the United States, for the recovery of land in the city of Hot Springs, Ark., on the permanent reservation, described as Bathhouse No. 8, and for rent as damages. The plaintiff in his petition deraigned title through an ancestor who he alleged held under Spanish grant, and· for cause of action claimed that by the fifth amendment of the Constitution of the United States and the third article of the treaty of the United States with the Republic of France, the United States undertook and agreed to maintain plaintiff's ancestor and heirs in their title to the land in controversy and in enjoyment of the same; but that, in violation of the treaty and without due process of law and in violation of the fifth amendment of the Constitution of the United States, defendant had without right ousted plaintiff from possession and was wrongfully holding possession of the land, etc. In that case the court held that it did not appear from plaintiff's own statement that the case arose under the Constitution or a treaty of the United States. In thus deciding, the court said:

"But no right, title, privilege, or immunity was here asserted as derived from the Constitution or the treaty, as against these private individuals, who were impleaded as defendants, either specifically, or through averments that plaintiffs were ousted in violation of the treaty and of the fifth amendment, the provisions of which it was the duty of the federal government to observe. The gravamen of the complaint was that plaintiffs' ancestor had a perfect title, to which they had succeeded, and the appropriate remedy for illegal invasion of the right of possession was sought; but it was not made to appear that the Circuit Court

had jurisdiction, for the action was not against the United States, nor could it have been, as the United States had not consented to be so sued, and, so far as defendants were concerned, it was not charged that they took possession by direction of the government, and plaintiffs set up no more than a wrongful ouster by merely private persons, remediable in the ordinary course, and in the proper tribunals. And see *Arkansas v. Coal Co.*, 183 U. S. 185 [22 Sup. Ct. 47, 46 L. Ed. 144] ; *Muse v. Arlington Hotel Co.*, 168 U. S. 430 [18 Sup. Ct. 109, 42 L. Ed. 531]."

The case of *Telluride P. T. Co. v. Rio Grande W. Ry. Co.*, 175 U. S. 639, 20 Sup. Ct. 245, 44 L. Ed. 305, was a suit filed in the district court of Utah by the railway company against the power company. The complaint set forth that the railway company was authorized to construct a railway in Provo Canyon, on either of two routes ; that it had commenced the survey of the line which passed over certain tracts of land of the United States, of which one Murphy was in the possession, prior to the survey ; that it became the owner of this right of way, under the act of Congress affirming such right, etc.; and that, while in lawful possession of the land, the defendant set up an adverse claim and stopped its work by force and denied its right to use the land for railway purposes. It demanded a decree adjudging the adverse claim unfounded, that its rights be affirmed, and that defendants be enjoined. In passing on the case on a writ of error to the Supreme Court of Utah, the court say :

"The position of the plaintiffs in error is that, as their whole case depended upon the rights asserted by them under section 2339 (U. S.) [U. S. Comp. St. 1901, p. 1437], and that, as the courts decided adversely to the rights claimed by them, there was no necessity of a special reference to that statute."

In dismissing the case on the ground that no federal question was involved, the court said :

"But the difficulty in this case is that, before it could be said that any right or title under a statute of the United States had been denied, it was necessary to establish as a question of fact priority of possession on the part of the Telluride Company, as well as conformity to local customs, laws, and decisions. These were local and not federal questions. The jurisdiction of this court in this class of cases does not extend to questions of fact

or of local law, which are merely preliminary to, or the possible basis of a federal question."

The United States Court for the Eastern District of Oklahoma has considered, in other cases similar to this, the question of its jurisdiction, and held against it. The case of *Taylor v. Anderson* was commenced by original petition in the United States Court for the Eastern District of Oklahoma. A demurrer was sustained to the petition on the ground that the court had no jurisdiction, for the reason that the petition did not show, by its necessary and proper averments, that it was one arising under the Constitution and laws of the United States. That case was stated as fully as possible, and with the purpose of showing, if possible, federal jurisdiction. The plaintiffs were shown to be full-blood Choctaw Indians, heirs of a full-blood, deceased allottee. The petition set up the patent to their ancestor, and specifically pleaded the various sections of the treaties and acts of Congress relating to the allotment of lands, the patent thereto, and the restrictions against alienation. Also, that the heirs had executed a void deed to the lands, without sufficient consideration, and in violation of the laws of Congress, and that the defendants had attempted by deed to convey the lands, and were withholding the possession from plaintiffs, etc., and that plaintiffs were entitled to possession and the rents and profits, etc. In that case the petition alleged that the primary question to be determined was a construction of the acts of Congress, etc. In that case, Judge Campbell held, in a memorandum opinion (not reported), that the United States Court was without jurisdiction, following and quoting extensively from the case of *Joy v. St. Louis, supra,* which he considered controlling. In the course of an exhaustive and able opinion he says:

"If in the case at bar the answer of the defendants should set up the defense anticipated by the plaintiffs, that is, should rely upon the deed of July 31, 1905, and should contend that under a proper construction of the acts of Congress referred to, the plaintiff could and did legally convey the premises in controversy by such deed, then there would arise a question as to the proper construction of such acts of Congress, and a federal question would then be involved. But the defense may not rely upon such defense. They may rely upon a deed of later date from the

plaintiffs, taken at such time and under such circumstances as would render it valid. They may deny that plaintiff's ancestor was in fact the allottee of the land, and may rely upon a deed from some other source. There are various defenses which they might set up other than that anticipated by the plaintiffs in their petition, which would not involve the construction of the acts of Congress referred to, but raise only questions under the state laws or questions of fact. But the question raised by the demurrer must be determined from a consideration of the necessary and proper allegations of the petition, shorn of all unnecessary parts, and so considered it cannot be said to present a case arising under the Constitution or laws of the United States, hence does not state a case within the jurisdiction of this court. Should the plaintiffs hereafter commence this action in the proper state court, and the defendants there set up in their answer the defense which the plaintiffs anticipate, then a federal question will be presented which the state court in the first instance has jurisdiction to determine. If the decision of the trial court on this federal question be adverse to the plaintiffs, they may appeal to the Supreme Court of the state; if the decision of that court on the question be again adverse to the plaintiffs, they may appeal to the Supreme Court of the United States, and thus finally have the question decided by a federal court."

The case at bar, as has been said, is essentially one of ejectment, and while in such case the plaintiff must recover upon the strength of his own title, and not upon the weakness of that of his adversary, yet it was unnecessary for him to allege in his petition how his estate or ownership arose.

By section 6122, Comp. Laws 1909, it is provided:

"In an action for the recovery of real property, it shall be sufficient if a plaintiff state in his petition that he has the legal or equitable estate therein and is entitled to the possession thereof, describing the same as required by section 5667, and that the defendant unlawfully keeps him out of possession. It shall not be necessary to state how the plaintiff's estate or ownership is derived."

By section 6123, Id., it is further provided:

"That it shall be sufficient in such action if the defendant in his answer deny generally the title alleged in the petition, or that he withholds the possession, as the case may be. But if he deny the title of the plaintiff, possession by the defendant shall be taken as admitted."

It follows that it was unnecessary for plaintiff to have de-raigned his title with particularity. · And his allegations as to the claim under which defendant was holding, thus anticipating what his defense would be, cannot be considered as raising· a federal question. As was said by Judge Campbell in the Taylor case, *supra,* the defendant might not use the defense anticipated, · but might rely upon any one of a number of other defenses proper under the law. In fact this is conclusively shown in this case, wherein the defense was a general denial, coupled with an admission of possession as alleged in plaintiff's petition. Under this answer, it is patent that the defendant could have used and relied upon various defenses which would in no sense involve a federal question. That he did not do so is immaterial; for if in the progress of the case a federal question has become involved, and is decided here adversely to defendant, his remedy would be by writ of error from the Supreme Court of the United States to this court.

It may be added that the petition in this case fails to show that the amount in controversy is sufficient to give the federal court jurisdiction. It is true a copy of the deed relied upon is pleaded and attached as an exhibit to the petition,· and shows a consideration of $4,500; but an examination of same shows that the deed covers a much larger quantity of land than is involved in this suit, and, for that reason, does not show the amount in controversy here. We are fully convinced, and hold, that under the facts of this case, and the authorities cited, there was no error in refusing the petition to remove to the federal court.

(2) We now come to consider the remaining proposition in the case. The record is silent as to the date of the selection of the allotment; but from the admissions in the agreed. statement of facts, and the briefs of both parties, we must conclude that the allotment was selected and certificate thereof issued under the "Original Creek Agreement." Act of Congress of March 1, 1901, c. 676, 31 St. at L. 870.

Such being the case, the allotment of Minnie Solander, not having been made at the date of her death, but later made under the "Original Creek Agreement," *supra,* the same descended to

her heirs according to the law of descent and distribution of the Creek Nation, as admitted and contended by both parties in this case. In the case of *De Graffenried et al. v. Iowa L. & T. Co.,* 20 Okla. 711, 95 Pac. 624, in discussing the Original Creek Agreement, on this point it is said:

"In short, sections 6 and 7 of this agreement fix the descent of the allotment (both surplus and homestead) in cases where the allottee received his allotment before he dies, and section 28 fixes it in cases where he dies before receiving his allotment. In either case it was intended to 'descend to his heirs according to the laws of descent and distribution of the Creek Nation.'"

In the case of *Barnett v. Way,* 29 Okla. 780, 119 Pac. 418, it is said:

"We think it was the intent to provide that the land which a deceased Indian would have been entitled to as allotment, if he had not died before allotment, should be allotted to and received by those persons as heirs of such Indian that would have received it under the Creek laws, if the allotment had been made to the deceased at the time of his death and had descended under said law."

In the Barnett case, *supra,* the allotment was selected and certificate issued under the "Curtis Act" (Act June 28, 1898, c. 517, 30 St. at L. 495), which provided for an allotment of the use and occupation of the surface only, and the Indian entitled to the allotment died before the adoption of the Original Creek Agreement. In the body of the opinion it is said:

"What the rule of descent and distribution was at the time of the death of Cita Barnett and her father, George Barnett, is unimportant; for, at the time of her death, she had no title, equitable or legal, in the fee in her allotment to descend. The rule of descent and distribution adopted by the treaty and to be applied in such case is the rule of descent and distribution in force in the Creek Nation, governing the devolution of property owned by any of its deceased members at the time of such member's death."

It has been held in *Brady v. Sizemore,* 33 Okla. 169, 124 Pac. 615, where a duly enrolled citizen of the Creek Nation died before receiving his allotment, and it was later allotted to his heirs, August 23, 1902 (under the "Creek Supplemental Agreement," Act of Congress approved June 30, 1902, ratified July 26, 1902), that the devolution of the allotment is governed by

chapter 49 of Mansfield's Digest of the Laws of Arkansas (Ind. T. Ann. St. 1899, secs. 1820-1843), to be applied as if deceased had received title to his allotment and died seised thereof. See *Sanders v. Sanders,* 28 Okla. 59, 117 Pac. 338; *Hooks v. Kennard,* 28 Okla. 457, 114 Pac. 744; *Barnett v. Way, supra;* and *Brady v. Sizemore, supra.*

It may be gathered from a reading of the cases decided in this court, upon the question of the devolution of a Creek allotment, that the law of descent, in force at the date the selection of the allotment takes effect, governs as to the classification of the heirs; and this law relates back to the death of the Indian entitled to the allotment, and identifies the heirs as of that date.

The selection of an allotment, under the "Curtis Act," *supra,* though made prior to, takes effect upon the date of the approval of the Original Creek Agreement, *supra,* and allotments so selected, together with those selected under the "Original Creek Agreement," pass to the heirs of the Indian entitled to take the allotment, under the Creek laws of descent; while those allotments selected under the Creek Supplemental Agreement (Act of Congress June 30, 1902, c. 1323, 32 St. at L. 500) pass under the laws of descent found in chapter 49 of Mansf. Dig. of Ark. In either event, you take the governing law of descent, and carry it back to the date of the death of the Indian entitled to take the allotment, and identify the heirs of such Indian, under such law of descent, as of the date of such death.

Then who were the heirs, under the Creek law of descent, of Minnie Solander? Plaintiff contends they were her noncitizen husband, George Solander, and her daughter, Hettie Solander. Defendant contends that her sister Phoebe Trusler was her heir, for the reason that her daughter Hettie died before the selection of the allotment, and that her noncitizen husband could not inherit.

We think, under the law and the decisions of this court, that the contentions of the plaintiff are correct. That the noncitizen husband would take an heir's part, under the Creek law of descent, has been held by this court, upon exhaustive and satis-

factory reasoning. In *de Graffenried v. Iowa L. & T. Co., supra,* it is said:

"When in the original agreement the Creek people said that the allotments made thereunder should descend under the laws of descent and distribution of the Creek Nation, it necessarily follows that they meant that therein the intermarried noncitizen husband should receive out of his citizen. wife's allotment an heir's part," etc.

That an allotment, under circumstances similar to the ones here, would go to the heirs, as of the date of the death of the Indian entitled to the allotment, has been held in *Barnett v. Way* and *Brady v. Sizemore, supra,* and *Morley v. Fewel,* 32 Okla. 452, 122 Pac. 700. Therefore, her daughter Hettie, being alive when her mother died, and being the only child, and her noncitizen father being held entitled to take an heir's part, it follows that the allotment of Minnie passed to George and Hettie Solander in equal parts, and upon the death of Hettie Solander, intestate and without issue, December 19, 1899, her share was cast upon her father, George Solander, as her nearest relation, who had the right April 27, 1906, to convey the whole estate to plaintiff as was done.

The cause should be affirmed.

By the Court: It is so ordered.